UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| BETTY JO PHEIFFER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VOLKSWAGEN AG, VOLKSWAGEN GROUP OF AMERICA, INC., SCOTT KEOGH, and MARK GILLIES,<br><br>Defendants. | CASE No.: 1:22-cv-00045-RDA-TCB<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION OF LASZLO ROZSAVOLGYI TO: (1) APPOINT LEAD PLAINTIFF; AND (2) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL<br><br><u>CLASS ACTION</u> |

Movant Laszlo Rozsavolgyi ("Movant") respectfully submits this memorandum of law in support of Movant's motion for an Order, pursuant to Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)    appointing Movant as Lead Plaintiff for the class of all purchasers or acquirers of the American Depositary Receipts ("ADRs") of Volkswagen AG ("Volkswagen" or together with its subsidiaries the "Company") between March 29, 2021 and March 30, 2021, inclusive (the "Class Period"); and

(b)    approving Movant's selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel and The Law Firm of Carlton F. Bennett, P.L.L.C. ("Bennett Law") as Liaison Counsel for the Class.

## INTRODUCTION AND BACKGROUND

This action was commenced on January 14, 2022 against Volkswagen, Volkswagen Group of America, Inc., Scott Keogh, and Mark Gillies for violations under the Exchange Act. That same day, an early notice pursuant to the PSLRA was issued advising class members of, *inter alia*, the

allegations and claims in the complaint, the Class Period, and of their option to seek appointment as Lead Plaintiff. *See* Declaration of Carlton F. Bennett ("Bennett Decl.") Ex. 1, filed herewith.

Defendant Volkswagen is one of the world's leading automobile manufacturers and the largest carmaker in Europe. Volkswagen's ADRs trade on the OTC under the ticker symbol "VWAGY." Defendant Volkswagen is the parent corporation and sole owner of Volkswagen Group of America, Inc. ("VWoA"). VWoA, which is headquartered Herndon, Virginia, houses the U.S. operations of Volkswagen's brands.

On March 15, 2021, Volkswagen staged a so-called Power Day to showcase its latest electric car technology. Then, on March 29, 2021, VWoA published a "draft" of a press release on its website for a short time, announcing its purported name change from "*Volks*wagen" to "*Volts*wagen." The volt is the standard international unit of electric potential or electromotive force. The "draft" press release announced that the name change was expected to take effect in May. In this "draft" press release, Defendant Keogh stated: "We might be changing out our K for a T, but what we aren't changing is this brand's commitment to making best-in-class vehicles for drivers and people everywhere." The release called the change a "public declaration of the company's future-forward investment in e-mobility." The release also stated that "[t]he new name and branding symbolize the highly-charged forward momentum Voltswagen has put in motion, pursuing a goal of moving all people point-to-point with EVs."

VWoA doubled down on its deception a day later, posting on Tuesday morning, March 30, 2021, another full, finished, and "official" version of the same release, which quoted Defendant Keogh and Kimberly Sweet Gardiner ("Gardiner"), VWoA's Senior Vice President and Head of Marketing, celebrating the new moniker. The Company presented it as a straight announcement, as if it were the truth, stating in pertinent part that "[t]oday, Volkswagen Group of America, is unveiling the official change of its U.S. brand name from Volkswagen of America to Voltswagen

of America. U.S. name change from Volkswagen of America to Voltswagen of America begins May 2021. Rebranding to include revised name, brand guidelines and VW.com design. Starting today, new branding will roll out across all of the company's advertising, website and social media channels."

The complaint alleges that throughout the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the name "Voltswagen" was never going to be used by the Company's U.S. subsidiary; (ii) the Company and its spokespeople purposefully misled reporters, even after the reporters' inquiries about whether the name change was an April Fool's joke; and (iii) as a result, Defendants' public statements and statements to journalists were materially false and/or misleading at all relevant times.

Then late on March 30, 2021, the *Wall Street Journal* published a "WSJ News Exclusive" entitled "No, Volkswagen Isn't Rebranding Itself Voltswagen: German car maker says announcement by its U.S. operation was supposed to be an April Fools' gag[.]" The *Wall Street Journal* article added "The spoof began late Monday, when VW communications in the U.S. published a draft of the press release on the company's website and then quickly took it down, according to VW officials in Germany[,]" and then "VW's U.S. unit published the release in full again on Tuesday on the U.S. website, a move that suggested the name change was in fact real and would take effect as stated in the release in May."

On March 31, 2021, more reports were published regarding how Volkswagen, VWoA, and its spokespeople purposefully misled reporters. For example, *ABC News* published an article entitled "An unwelcome prank: Volkswagen purposely hoodwinks reporters: Journalists are wary of looking out for pranksters around April Fool's Day, but this time it came from a multi-billion dollar corporation[.]" The *ABC News* article reported, in part, that: "Several news organizations,

3

including *The Associated Press*, *USA Today*, *CNBC* and *The Washington Post*, had reported the original press release as real news, some after being assured specifically that it was no joke."

On this news, Volkswagen ADRs fell $2.17 per ADR, or over 5%, over the next two full trading days, to close at $35.58 per share on April 1, 2020, damaging investors. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## ARGUMENT

### I. MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice…;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria, and thus is entitled to the presumption of being the "most adequate plaintiff" for the Class.

### A. Movant Is Willing to Serve as Class Representative

Movant has filed herewith a PSLRA certification attesting that Movant is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Bennett Decl., Ex. 2. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

### B. Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax*/*Olsten*-styled[1] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness, Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

Movant lost approximately $28,630.50 in connection with purchases of Volkswagen ADRs. *See* Bennett Decl., Ex. 3. Movant is not aware of any other movant that has suffered greater losses in Volkswagen securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

---

[1] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

### C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). In deciding a lead plaintiff motion, the court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a). *See In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 435 (E.D. Va. 2000).

#### 1. Movant's Claims are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's when the movant is "part of the class and possess[es] the same interest and suffer[s] the same injury as the class members." (Citation omitted.) *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 (4th Cir. 2001); *see also Microstrategy*, 110 F. Supp. 2d at 435 ("A person's claim is typical when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.") (Internal quotes omitted). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002).

6

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and misleading statements about the Company's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

### 2. Movant Is Adequate

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001). The PSLRA directs the court to limit its inquiry of the movant's adequacy to represent the class to the following: (1) the absence of potential conflict between the proposed lead plaintiff and the class members; and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *See Microstrategy*, 110 F. Supp. 2d at 435.

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between Movant's claims and those asserted on behalf of the Class. Movant also sustained substantial financial losses from investments in Volkswagen securities and is, therefore, extremely motivated to pursue claims in this action.

### D. Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against him that would render Movant inadequate to represent the Class. Movant lives in Szentgotthard, Hungary. He has approximately 20 years of investing experience and is currently retired. Prior to his retirement, Movant taught mathematics and physics.

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore, subject to rebuttal. Accordingly, Movant has suffered financial losses and has the largest financial interest in this case of any timely movant.

## II.  MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen Law as Lead Counsel and Bennett Law as Liaison Counsel. The firms have been actively researching Movant's and the Class's claims, including reviewing publicly available financial and other documents while gathering information in support of the claims against Defendants. Furthermore, Rosen Law has an extensive history bringing significant recoveries to investors and is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in courts throughout the country. *See* Bennett Decl., Ex. 4. The firm has prosecuted numerous securities fraud class actions and other

complex litigation and obtained substantial recoveries on behalf of investors. Likewise, Bennett Law has successfully represented Virginians in a range of litigation. *See* Bennett Decl., Ex. 5.

As a result of the firms' experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel and Liaison Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) appointing Movant as Lead Plaintiff of the Class; (2) approving Movant's selection of Rosen Law as Lead Counsel and Bennett Law as Liaison Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: March 15, 2022                   Respectfully submitted,

**THE LAW FIRM OF CARLTON F. BENNETT, P.L.L.C.**

/s/ Carlton F. Bennett
Carlton F. Bennett (Va. Bar No. 18453)
120 South Lynnhaven Road, Suite 100
Virginia Beach, VA 23452
Telephone: (757) 266-5149
Fax: (757) 486-8910
Email: cbennett@carltonbennettlaw.com

*[Proposed] Liaison Counsel for Lead Plaintiff and Class*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com

Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Carlton F. Bennett