UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |
|---|---|
| *In re Volkswagen AG Securities Litigation* | **Case No. 1:22-cv-00045-RDA-TCB**<br><br>**CLASS ACTION** |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR RECONSIDERATION**

MCGUIREWOODS LLP

Garrett H. Hooe (VSB No. 83983)
Gateway Plaza
800 Canal Street
Richmond, Virginia 23219
Tel:  804-775-1065
Fax:  804-698-2079
ghooe@mcguirewoods.com

SULLIVAN & CROMWELL LLP

Robert J. Giuffra, Jr. (*pro hac vice*)
Sharon L. Nelles (*pro hac vice*)
125 Broad Street
New York, NY 10004
Tel:  212-558-4000
Fax:  212-558-3558
giuffrar@sullcrom.com
nelless@sullcrom.com

Laura Kabler Oswell (*pro hac vice*)
1870 Embarcadero Road
Palo Alto, California 94303
Tel.:  650-461-5600
Fax:  650-461-5700
oswelll@sullcrom.com

Daniel J. Richardson (VSB No. 94961)
1700 New York Avenue NW
Washington, D.C. 20006
Tel:  202-956-7500
Fax:  202-293-6330
richardsond@sullcrom.com

*Counsel for Defendants Volkswagen AG, Volkswagen
Group of America, Inc., Scott Keogh, and Mark Gillies*

April 6, 2023

**TABLE OF CONTENTS**

*Page*

**PRELIMINARY STATEMENT** ........................................................................................................1

**ARGUMENT**.............................................................................................................................3

I.     **PLAINTIFFS CANNOT MOVE FOR RECONSIDERATION WHILE ALSO SEEKING TO AMEND THEIR COMPLAINT.**..........................................................3

II.     **PLAINTIFFS HAVE FAILED TO IDENTIFY ANY "CLEAR ERROR" IN THE COURT'S OPINION.** ...................................................................................................4

    A.     The Court's Analysis of the "In Connection With" Requirement Was Far From Clear Error. .........................................................................................................5

    B.     Plaintiffs' Objections to the Court's Opinion Are Meritless. ..........................................8

III.     **IF THE COURT GRANTS PLAINTIFFS' MOTION, IT SHOULD ALSO RECONSIDER WHETHER PLAINTIFFS PLAUSIBLY ALLEGED SCIENTER.** ..............................................................................................................10

**CONCLUSION** .......................................................................................................................13

## PRELIMINARY STATEMENT

Plaintiffs are pursuing an unprecedented theory of securities fraud liability. They alleged that the wholly-owned U.S. sales subsidiary of a foreign company (and the subsidiary's employees) can be held liable for securities fraud based solely on transactions in *unsponsored* American Depositary Receipts (ADRs) that reference the foreign stock of the parent corporation. Applying established law requiring Plaintiffs to allege a sufficient connection between the conduct of the subsidiary's employees and the foreign-traded securities on which they rest their claim, this Court held that Plaintiffs had failed to plead sufficient facts to support their novel theory of liability. That decision was correct.

Plaintiffs now move for the "extraordinary remedy" of reconsideration. In doing so, they do not identify any authority the Court overlooked. Instead, they argue that the Court committed clear error in dismissing their unprecedented suit. *Zhou* v. *Lowe's Home Ctrs., LLC*, 2022 WL 1096894, at *1 (E.D. Va. Mar. 11, 2022); *see* Plaintiff's Memorandum of Law in Support of Motion for Reconsideration ("Pltfs' Br.") at 4 (quoting *Matter of Vulcan Constr. Materials, LLC*, 433 F. Supp. 3d 816, 819-20 (E.D. Va. 2019)). Plaintiffs' Motion cannot meet the demanding standards for reconsideration for two independent reasons.

*First*, Plaintiffs cannot move for reconsideration following a dismissal without prejudice. *See Finn* v. *Spiker*, 2005 WL 4663687, at *1 (E.D. Va. Sept. 13, 2005), *aff'd*, 172 Fed. Appx. 509 (4th Cir. 2006). This Court resolved the motion to dismiss on the narrow ground that Plaintiffs had not established any connection between Volkswagen AG ("VWAG") and the misleading statements alleged in Plaintiffs' complaint—namely statements made by Volkswagen Group of America ("VWGoA"), a VWAG subsidiary, during an April Fools' Day marketing campaign. The Court then provided Plaintiffs 14 days to move to further amend their complaint. By the Court's clear instruction, the proper way for Plaintiffs to pursue their claims is by filing a

proposed amended complaint (as they already have) and by litigating their motion to amend, not by seeking the extraordinary remedy of reconsideration. To the extent Plaintiffs are concerned their motion to amend will not be granted, that reflects only the weakness in their case, not any injustice created by the Court's decision.

*Second*, Plaintiffs fail to identify any error, let alone clear error, in this Court's decision. As Plaintiffs acknowledge, Section 10(b) requires a securities fraud plaintiff to allege a sufficient connection between the fraudulent conduct and the securities at issue in the suit. Here, the Court properly held that the Complaint pleaded that all of the alleged misleading statements were made by employees of VWGoA, *not VWAG*. Yet Plaintiffs' claim relies entirely on securities that have nothing to do with VWGoA—unsponsored VWAG ADRs issued by U.S. banks. VWGoA issues no securities, and Plaintiffs do not allege that VWGoA's employees were aware of VWAG's ADRs, much less that they considered those securities in undertaking VWGoA's April Fools' Day marketing campaign. Under these highly unusual circumstances, it was far from clear error to hold, as the Court did, that statements made by personnel of a U.S. subsidiary that has no connection to securities markets cannot support a claim based on ADRs issued by U.S. banks that have nothing to do with that subsidiary.

To resist that straightforward conclusion, Plaintiffs argue that the Court created a rule whereby "liability must attach to the issuer of a security under [Section] 10(b) in order to find that the false statements [of] other actors" were made "in connection with the purchase or sale of a security." Pltfs' Br. at 6. The Court did no such thing. Instead, the Court faithfully applied Fourth Circuit precedent, which calls for a "flexible" and "case-by-case" analysis of the "in connection with" requirement, *SEC* v. *Pirate Inv'r LLC*, 580 F.3d 233, 244 (4th Cir. 2009), to hold that Plaintiff had not alleged a sufficient connection between the conduct of VWGoA's employees

-2-

and the unsponsored ADRs referencing VWAG's foreign-traded stock.  Because that decision was not clearly erroneous, Plaintiffs' Motion for Reconsideration should be denied.

## ARGUMENT

"Motions for reconsideration" under Federal Rule of Civil Procedure 59(e) "may be granted [only] on certain limited grounds: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not previously available; or (3) to correct a clear error of law or prevent manifest injustice." *Zhou*, 2022 WL 1096894, at *2 (citing *United States ex rel. Becker* v. *Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002)). "Reconsideration of a judgment after its entry is an extraordinary remedy," and "may not be used to relitigate old matters, or to raise arguments . . . that could have been raised prior to the entry of judgment." *Id*. (citations omitted).  It is well settled that a plaintiff's "mere disagreement" with the resolution of a disputed legal issue "does not support a Rule 59(e) motion." *Hutchinson* v. *Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993).

Plaintiffs do not contend that any intervening change in the law or new evidence warrants this Court's reconsideration.  Instead, they contend that the Court's thoughtful disposition of a fact-bound question of securities law was clearly erroneous.  Specifically, Plaintiffs contend the Court erred by holding that the Complaint failed to allege a sufficient connection between VWGoA's "Voltswagen" marketing campaign and Plaintiffs' transactions in unsponsored ADRs. That argument is procedurally barred and misreads the Court's narrow decision.

## I.     Plaintiffs Cannot Move For Reconsideration While Also Seeking to Amend Their Complaint.

"Relief under 59(e) is not warranted" when an "action was dismissed without prejudice" and the plaintiff "is free to file a new action." *Finn*, 2005 WL 4663687, at *1.  That rule adheres to the Fourth Circuit's guidance that "[i]n general 'reconsideration of a judgment after

its entry is an extraordinary remedy which should be used sparingly.'" *Pacific Ins. Co.* v. *American Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quoting Wright & Miller, *Federal Practice & Procedure* §2810.1 (3d ed. Apr. 2022)). As this Court has previously explained, "[n]o manifest injustice will result from" a dismissal without prejudice because the plaintiff is given an opportunity to move to amend its complaint and obtain a favorable judgment. *Huff* v. *Att'y Gen. of Va.*, 2009 WL 1160174, at *1 (E.D. Va. Apr. 28, 2009). And any clear error in the opinion can be addressed by a new round of briefing on the merits at that time. [1]

That rule independently bars Plaintiffs' Motion for Reconsideration. After dismissing Plaintiffs' suit, the Court invited Plaintiffs to move to further amend their Complaint to address the deficiencies in their case. Plaintiffs have now filed a motion to amend, and can use that motion to identify new factual allegations and to press any legal arguments that may turn on those allegations. Simply put, if Plaintiffs are dissatisfied with the outcome of this case, their pending motion to amend is the appropriate vehicle to raise their arguments.

## II.     Plaintiffs Have Failed to Identify Any "Clear Error" in the Court's Opinion.

As hard as they try, Plaintiffs cannot demonstrate any error by this Court that would justify the "extraordinary remedy" of reconsideration. *Zhou*, 2022 WL 1096894, at *1 (internal citations omitted). Plaintiffs' Complaint alleged an unprecedented and extremely attenuated theory of securities liability: That a foreign company's wholly-owned U.S. subsidiary (VWGoA), which does not issue securities of any kind, can be held liable for alleged misstatements that do

---

[1] This Court's rule prohibiting Rule 59(e) motions following dismissals without prejudice is consistent with the Fourth Circuit's view that, "[g]enerally, an order dismissing a complaint without prejudice is not an appealable final order under 28 U.S.C. § 1291 when 'the plaintiff could save his action by merely amending his complaint.'" *Young* v. *Nichols*, 413 F.3d 416, 418 (4th Cir. 2005) (quoting *Domino Sugar Corp.* v. *Sugar Workers Local Union 392*, 10 F.3d 1064, 1066-67 (4th Cir. 1993)).

not mention securities, on the ground that those statements are connected to unsponsored ADRs that only reference the foreign parent (VWAG). Only one court has ever permitted a private securities claim to move forward based on unsponsored ADRs, *see Stoyas* v. *Toshiba Corp.*, 424 F. Supp. 3d 821, 826 (C.D. Cal. 2020), and Defendants are not aware of any court that has done so in a suit based on the conduct of a U.S. subsidiary, rather than a foreign issuer. In rejecting that claim at the motion-to-dismiss stage, the Court carefully parsed existing precedent and correctly held that Plaintiffs had not satisfied Section 10(b)'s "in connection with" requirement on the specific facts alleged in the Complaint. That thorough decision did not clearly depart from any precedent of the Supreme Court or the Fourth Circuit—nor could it have, given that Plaintiffs' claim involves undeniably novel facts out of a law school exam.

Plaintiffs' argue that the Court adopted a broad rule whereby only the issuer of a security can be liable under Section 10(b). *See* Pltfs' Br. at 9. That is incorrect. The Court's analysis was grounded in the unprecedented theory of liability alleged in the Complaint and in no way disrupts settled law holding that non-issuers can be liable under certain circumstances.

## A. The Court's Analysis of the "In Connection With" Requirement Was Far From Clear Error.

To overcome a motion to dismiss in this case, Plaintiffs needed to allege a sufficient connection between VWGoA's "Voltswagen" April Fools' Day joke and Plaintiffs' transactions in unsponsored VWAG ADRs. *See SEC* v. *Pirate Investor LLC*, 580 F.3d 233, 244 (4th Cir. 2009). Taking the allegations in the Complaint as true, the "Voltswagen" joke did not mention VWAG or VWAG securities, VWGoA does not issue securities of any kind, and VWAG (the only Defendant with any connection to securities at all) was not involved in the joke.

To determine if the "in connection with" requirement had been sufficiently pled on those unusual facts, the Court engaged in a rigorous, multi-step analysis. The Court first examined

precedent explaining that the "in connection with" requirement is often met in cases "[w]here the fraud alleged involves public dissemination in a document . . . on which an investor would presumably rely."  Mem. Op. and Order ("Op.") 46, ECF No. 48 (citing *Pirate Inv'r*, 480 F.3d at 249); *see also In re Marriott Int'l Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 96, 139-40 (D. Md. 2021).  Applying that standard, the Court concluded that "press releases" like those issued by VWGoA during the "Voltswagen" marketing campaign could, in theory, support a securities fraud claim.  *Id.*

Next, the Court considered the unique context created by ADRs, reasoning that "the distinction between a sponsored and unsponsored ADR program impacts the degrees of separation between the ADR and the foreign issuer."  Op. 48 (citing SEC Investor Bulletin at 1-2).  In doing so, the Court echoed the Securities and Exchange Commission, which has explained that

> if [a defendant] can show that it chose to list and transact its securities only in foreign markets precisely to avoid U.S. securities regulation and litigation, it [will] be more difficult for respondents to prove that petitioner's . . . fraud was "in connection with" domestic ADR purchases.

Brief for the United States as Amicus Curiae at 16, *Toshiba Corp.* v. *Automotive Indus. Pension Tr. Fund*, No. 18-486 (U.S. May 20, 2019).  Even though the Court noted the importance of that distinction, it rejected at the pleading stage Defendants' argument that Plaintiffs failed to allege specific facts showing any involvement by VWAG in unsponsored ADR programs.  Op. 50 ("Whether or not . . . interactions [between VWAG and the U.S. bank] occurred is likely near impossible to know at the pleading stage, making it a question best answered through discovery.").

By that point in the analysis, the Court had determined that (i) the public statements made during VWGoA's April Fools' Day marketing campaign were the type that had previously been found to support securities fraud claims, and (ii) Plaintiffs had plausibly alleged that VWAG had some connection to unsponsored ADRs.  But even after holding for Plaintiffs on both points,

the Court found there was one critical link still missing in the chain: "Plaintiffs have not adequately demonstrated that [VWAG] may be held liable under [Section] 10(b) because the Amended Complaint does not state with the level of particularity demanded by the [Private Securities Litigation Reform Act] that Volkswagen confirmed the publication of the press release." Op. 52. Put differently, the Court held that because Plaintiffs had not shown *VWAG's* alleged involvement in the April Fools' Day joke, Plaintiff failed to connect the alleged fraud (VWGoA's joke) to the securities that gave rise to Plaintiffs' suit (unsponsored VWAG ADRs). Although Defendants asked the Court to go further and hold that a foreign issuer cannot be held liable based on unsponsored ADRs—a position Defendants still believe to be correct—the Court opted for a more narrow and case-specific path.

Far from clear error, the Court's reasoning was grounded in the "flexible," "case-by-case" analysis called for by decisions like *Pirate Investors* and *SEC* v. *Zandford*, 535 U.S. 813, 819 (2002). It did not conflict with the only other recent decision based on unsponsored ADRs, which involved a claim brought against a foreign issuer rather than a U.S. subsidiary. *See Toshiba Corp.*, 424 F. Supp. 3d at 826. And it carefully considered the implications of Plaintiffs' theory for the Supreme Court's recent decision shielding parent corporations from liability based on statements made by a subsidiary. Op. 52 (discussing *Janus Capital Grp., Inc. v. First Derivative Traders,* 564 U.S. 135 (2011)). As the Court understood, it would undermine the legal distinction between parent corporations and their subsidiaries if a plaintiff could pursue a claim based entirely on *statements* made by only a U.S. subsidiary but *securities* related to only a foreign parent. That is particularly true here, as the alleged misstatements had nothing to do with VWAG or ADRs and there is no allegation that anyone at VWGoA considered ADR investors when making the joke. To be sure, Defendants believe the Court should have gone further and held that Plaintiffs could

not pursue a claim based on unsponsored ADRs full stop. But the Court certainly did not commit clear error by resolving that issue in a manner more favorable to Plaintiffs.

For each of those reasons, the Court's decision reflected thoughtful consideration of the difficult issues raised by Plaintiffs' claim, and reached an outcome that is consistent with Supreme Court and Fourth Circuit precedent.

### B.    Plaintiffs' Objections to the Court's Opinion Are Meritless.

Attacking a straw man, Plaintiffs critique the Court's decision on the ground that "persons other than the issuer of the subject security can be held primarily liable under Section 10(b) for false statements of material fact in connection with the purchase or sale of securities." Pltfs' Br. at 9. But the Court did not question that proposition. Instead, it applied the uncontroversial principle that a non-issuer can be held liable only when its alleged misstatements "touch" and "coincide" with the securities transactions at issue in the suit. *Pirate Inv'r*, 580 F.3d at 246-47, 251. That requirement was not met here because the only possible way to connect non-issuer VWGoA's April Fools' Day marketing campaign to unsponsored VWAG ADRs was through the parent corporation that allegedly approved of those ADRs—yet, as the Court explained, Plaintiffs alleged no facts showing that VWAG was involved in or approved of the joke. If there were any doubt about the limited reach of the Court's decision, it is resolved by the Court's clear statement that "underwriters, brokers, bankers, and non-issuer sellers" should not be placed "beyond the reach" of the securities laws. Op. 47 (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 102 (2d Cir. 2007)).

Although Plaintiffs claim that "a plethora of cases" undermine the Court's position, each of Plaintiffs' authorities demonstrate the unprecedented nature of their claim. Much of Plaintiffs' argument is devoted to *Pirate Investors*, where the Fourth Circuit held that the publisher of an investment newsletter that disseminated false information about a public company could be

held liable for securities fraud.  580 F.3d at 237.  In holding that the "in connection with" requirement was satisfied in that case, the Fourth Circuit explained "that securities purchases were necessary to complete [the] fraudulent scheme," "that [defendants] made their misrepresentations with the intent to induce securities transactions," and "that [defendants] directed the misrepresentations to investors that they knew were likely to rely on them."  *Id*. at 252.  But Plaintiffs' claim checks none of those boxes, as VWGoA's April Fools' joke did not turn on investor reaction and was not directed toward securities markets (let alone the market for unsponsored VWAG ADRs).

Plaintiffs also cite a pair of decisions allowing Section 10(b) claims to proceed against non-issuers.  But in each of those cases, the defendant made statements that were directly connected to the securities giving rise to the Plaintiffs' claim.  Pltfs' Br. at 9.  In *Aegean Marine Petroleum Network Inc. Securities Litigation*, for instance, the district court held that plaintiffs who had purchased a public company's stock could pursue a claim against an outside auditor based on the auditor's reckless statements about *that company's* finances.  529 F. Supp. 3d 111, 157 (S.D.N.Y. 2021).  Similarly, in *Turquoise Hill Resources Ltd. Securities Litigation*, the district court allowed a claim brought by plaintiffs who traded a parent company's stock to move forward against a subsidiary that allegedly made a series of misstatements about a major project undertaken by *that parent*.  2022 WL 4085677 (S.D.N.Y. 2022).  Both cases had what is lacking here:  a connection between the plaintiffs' securities transactions and the defendants' alleged misstatements.  By contrast, VWGoA's April Fools' Day joke said nothing whatsoever about VWAG or unsponsored VWAG ADRs.[2]

---

[2] Plaintiffs' other authorities are even further afield.  In *SEC* v. *Woolf*, 835 F. Supp. 2d 111, 114 (E.D. Va. 2011), the defendants were held liable for "carr[ying] out a scheme to dupe inexperienced investors into buying seminar packages and trading stocks with lies and

The Court properly held that Plaintiffs failed to allege a sufficient connection between Defendants' conduct and the unsponsored ADRs at issue in their suit. According to the Court, even though Plaintiffs' allegations were sufficient to establish a connection between VWAG and unsponsored ADRs issued by U.S. banks, that alone was not sufficient to connect those ADRs to an alleged marketing fraud in which VWAG played no part. That decision was not clearly erroneous, and Plaintiffs' Motion for Reconsideration should be denied.

## III.   If the Court Grants Plaintiffs' Motion, It Should Also Reconsider Whether Plaintiffs Plausibly Alleged Scienter.

If the Court takes the extraordinary step of reconsidering its prior decision, it should also revisit its holding that Plaintiffs adequately pleaded scienter as to VWGoA and the two Individual Defendants, Scott Keogh and Mark Gillies. To Defendants' knowledge, no court has ever held that a securities fraud plaintiff pleaded scienter when no individual defendant or corporate agent had any plausible reason to deceive investors or stood to gain in any way from investors' reliance on the alleged misstatements. That is the case here, as Plaintiffs have failed to identify a single reason why Defendants would induce a 36-hour bump in the price of unsponsored VWAG ADRs.

Under the Private Securities Litigation Reform Act (PSLRA), Plaintiffs have the burden to plead "with particularity facts giving rise to a strong inference" that Defendants acted with the "intent to deceive, manipulate, or defraud" investors or with "severe recklessness" as to

---

misrepresentations about their background and expertise as traders." This Court held that the scheme was connected to securities because Defendants "urged their workshop students to trade securities." *Id.* at 120. And in *Galena Biopharma, Inc. Securities Litigation*, 117 F. Supp. 3d 1145, 1156, 1191 (D. Ore. 2015), the district court allowed a claim to proceed against stock promotors who participated in a "fraudulent scheme to promote [a company's] stock price" to facilitate "a 'pump and dump' insider trading scheme." Both cases involved an obvious connection between the plaintiffs' securities transaction and the defendants' unlawful conduct.

that result.  *Maguire Fin., LP* v. *PowerSecure Int'l, Inc.*, 876 F.3d 541, 546–47 (4th Cir. 2017) (citations omitted).  The PSLRA calls for a "comparative inquiry" of Plaintiffs' allegations against "plausible opposing inferences."  *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd*, 551 U.S. 308, 323 (2007).  Plaintiffs can only overcome a motion to dismiss if the allegations in the Complaint create "a strong inference, at least as compelling as any opposing inference, that the . . . defendant either knowingly or recklessly defrauded investors."  *Yates* v. *Municipal Mortg. & Equity, LLC*, 744 F.3d 874, 885 (4th Cir. 2014) (internal citations and quotation marks omitted).

Here, there is only one plausible inference to draw from Plaintiffs' allegations: That VWGoA made a joke to highlight its undeniably true commitment to electric cars.  The joke was rolled out right before April Fools' Day, was aimed at consumers, and included information about VWGoA's ongoing efforts to electrify its vehicles.  Against that innocent inference, there are no allegations demonstrating that the "Voltswagen" campaign reflected an intentional or severely reckless scheme to harm investors in unsponsored VWAG ADRs.  There are no allegations that any Defendant benefitted from the joke, that any aspect of the joke was aimed at investors or securities markets, or that any Defendant intended to deceive investors in any way.  Under the "comparative inquiry" called for by *Tellabs* and *Yates*, that should have been the end of the matter.

Respectfully, the Court's holding to the contrary was clearly erroneous.  The Court reasoned that Plaintiffs had adequately pleaded scienter because they alleged facts showing that "the Individual Defendants knew facts or had access to information suggesting their public statements were not accurate."  Op. 42 (citations and quotation marks omitted); *see* Op. 37-38 (noting that Defendants "confirmed the legitimacy of the name change to the press" and "confirm[ed] to inquiring journalists the seriousness of the press release").  But that is the

-11-

definition of falsity, not scienter. And there is no dispute here that the Individual Defendants made false statements—on the contrary, false statements are part and parcel of an April Fools' joke. The problem for Plaintiffs is they have not shown that Defendants made those false statements as part of an scheme *to defraud investors* in unsponsored VWAG ADRs or "must have been aware" *that investors would be harmed* by the joke. *Ottmann* v. *Hanger Ortho. Grp., Inc.*, 353 F.3d 338, 343-44 (4th Cir. 2003) (explaining that acts are severely reckless when they are "so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it"). The Court's analysis does not address that critical issue, and therefore conflates two separate elements of a Section 10(b) claim: the requirement to allege a material misstatement and the requirement to allege scienter. *See Maguire*, 876 F.3d at 548.

That error undermined the Court's analysis of whether the "inferences favoring Plaintiff" were more plausible than "nonculpable explanations for the defendant's conduct." *Tellabs*, 551 U.S. at 324. In conducting that "comparative inquiry," the Court first considered the obvious inference that VWGoA carried out a 36-hour April Fools' Day joke to generate truthful attention for its electric vehicles. But even though that inference has nothing to do with investors in unsponsored VWAG ADRs, the Court held that it cut *in favor of scienter*. The Court then considered two alternative inferences not suggested by either party—(i) that VWGoA seriously intended to change its name and never misled the press, and (ii) that VWGoA "push[ed] a name change for the express purpose of obtaining 'free publicity' [but] after a sloppy, mistimed announcement, used April Fools' Day as a scapegoat mechanism," Op. 39—and concluded that the second, more nefarious inference was more plausible. That analysis was irrelevant and wrong.

-12-

The parties agreed that VWGoA made a joke.  The dispute here is whether the innocent explanation for the joke (that VWGoA carried out the joke to drive truthful publicity for its products like many companies before it) was more plausible than the culpable explanation for the joke (that VWGoA intended to juice the price of unsponsored VWAG ADRs for 36 hours or must have been aware that investors would react to the joke).  The Court never answered that question.

All told, the Court held that Plaintiffs adequately pleaded scienter even though the Complaint does not allege that any Defendant intended any reaction from investors in unsponsored VWAG ADRs to the 36-hour "Voltswagen" joke, much less even considered those investors in developing this marketing campaign, which was plainly intended to impact consumers by highlighting Volkswagen's truthful commitment to the sale of electric vehicles.  As far as Defendants are aware, no court has ever allowed such a flimsy fraud claim to survive a motion to dismiss under those circumstances, and that result runs counter to binding precedent from the Supreme Court and the Fourth Circuit.  Therefore, if the Court reconsiders its earlier decision in light of Plaintiffs' argument on the "in connection with" requirement, it should also reconsider its full decision, including its holding that Plaintiffs met the PSLRA's demanding standard for scienter.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' Motion for Reconsideration.

MCGUIREWOODS LLP

SULLIVAN & CROMWELL LLP

*/s/ Garrett H. Hooe*
Garrett H. Hooe (VSB No. 83893)
Gateway Plaza
800 Canal Street
Richmond, Virginia 23219
Tel: 804-775-1065
Fax: 804-698-2079
ghooe@mcguirewoods.com

Robert J. Giuffra, Jr. (*pro hac vice*)
Sharon L. Nelles (*pro hac vice*)
125 Broad Street
New York, NY 10004
Tel: 212-558-4000
Fax: 212-558-3558
giuffrar@sullcrom.com
nelless@sullcrom.com

Laura Kabler Oswell (*pro hac vice*)
1870 Embarcadero Road
Palo Alto, California 94303
Tel.: 650-461-5600
Fax: 650-461-5700
oswelll@sullcrom.com

Daniel J. Richardson (VSB No. 94961)
1700 New York Avenue NW
Washington, D.C. 20006
Tel:  202-956-7500
Fax:  202-293-6330
richardsond@sullcrom.com

*Counsel for Defendants Volkswagen AG, Volkswagen Group of America, Inc., Scott Keogh, and Mark Gillies*

April 6, 2023

-14-

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2023, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF filing system, which will send notification of electronic filing (NEF) to all counsel of record.

_/s/ Garrett H. Hooe_
Garrett H. Hooe (VSB No. 83983)
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel:  804-775-1065
Fax:  804-698-2079
ghooe@mcguirewoods.com

_Counsel for Defendants Volkswagen AG, Volkswagen Group of America, Inc., Scott Keogh, and Mark Gillies_

-15-