UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| *In re Volkswagen AG Securities Litigation* | Case No. 1:22-cv-00045-RDA-TCB<br><br>CLASS ACTION |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND THE COMPLAINT**

MCGUIREWOODS LLP

Garrett H. Hooe (VSB No. 83983)
Gateway Plaza
800 Canal Street
Richmond, Virginia 23219
Tel: 804-775-1065
Fax: 804-698-2079
ghooe@mcguirewoods.com

SULLIVAN & CROMWELL LLP

Robert J. Giuffra, Jr. (*pro hac vice*)
Sharon L. Nelles (*pro hac vice*)
125 Broad Street
New York, NY 10004
Tel: 212-558-4000
Fax: 212-558-3558
giuffrar@sullcrom.com
nelless@sullcrom.com

Laura Kabler Oswell (*pro hac vice*)
1870 Embarcadero Road
Palo Alto, California 94303
Tel.: 650-461-5600
Fax: 650-461-5700
oswelll@sullcrom.com

Daniel J. Richardson (VSB No. 94961)
1700 New York Avenue NW
Washington, D.C. 20006
Tel: 202-956-7500
Fax: 202-293-6330
richardsond@sullcrom.com

*Counsel for Defendants Volkswagen AG, Volkswagen
Group of America, Inc., Scott Keogh, and Mark Gillies*

April 11, 2023

## TABLE OF CONTENTS

*Page*

**PRELIMINARY STATEMENT** ...................................................................................................1

**ARGUMENT** ................................................................................................................................4

**I.    THE PROPOSED AMENDMENTS DO NOT ALLEGE THAT VWAG WAS THE "MAKER" OF ANY STATEMENT.** ...............................................................................6

**II.   THE PROPOSED AMENDMENTS DO NOT ALLEGE THAT VWAG ACTED WITH SCIENTER.** ...............................................................................................................11

**CONCLUSION** ..........................................................................................................................13

## PRELIMINARY STATEMENT

Plaintiffs allege an unprecedented theory of securities fraud: That a foreign corporation that does not issue stock in the United States and its U.S. sales and marketing subsidiary can be held liable for securities fraud based solely on transactions in unsponsored American Depositary Receipts ("ADRs") that reference the foreign corporation's stock. What's more, Plaintiffs are pursuing that claim based on a 36-hour April Fools' Day marketing campaign, which was planned by and attributed to only the U.S. subsidiary, not the foreign parent. This Court correctly held that Plaintiffs' Amended Complaint failed to state a claim for securities fraud, and Plaintiffs' few additional allegations in their Proposed Second Amended Complaint don't change that result.

In dismissing Plaintiffs' First Amended Complaint, the Court first held that Plaintiffs could not pursue their claim based on unsponsored ADRs without showing that the issuer of the referenced stock—here Volkswagen AG ("VWAG")—could be held liable for the alleged fraud. Mem. Op. and Order ("Op.") at 52, ECF No. 48. As this Court explained, "[w]ithout a plausible theory of liability ascribed to the issuer, Plaintiffs' purchase or sale of Volkswagen ADRs cannot be said to 'touch[]' or 'coincide' with the alleged false statements of the Individual Defendants and [Volkswagen Group of America]." Op. 52. The Court also correctly recognized that a contrary rule would allow Plaintiffs to "contravene" the Supreme Court's decision in *Janus Cap. Group* v. *First Derivative Traders*, which held that the "maker" of a statement is the entity with "ultimate authority over the statement, including its content and whether and how to communicate it." 564 U.S. 135, 142 (2011). Thus, the Court reasoned that Plaintiffs could satisfy the "in connection with" requirement only by alleging that "the issuer of the underlying securities" would be *"liable under [Section] 10(b)."* Op. 52 (emphasis added).

The Court then explained that VWAG could not be held liable for two independent reasons. *First*, Plaintiffs failed to plausibly plead any facts showing that VWAG was the "maker" of any alleged misstatement. Op. 32-34. The Court correctly concluded that "Plaintiffs have not alleged with particularity that [VWAG] provided final approval over the press release and its details," and reasoned that "[m]erely alleging a daily monitoring function and the participation in the preparation of public statements does not allow this Court to infer that [VWAG] 'collaborated with the authors to such an extent that they controlled the [press release's] publication.' " Op. 33 (citing *Noto* v. *22nd Century Grp. Inc.*, 35 F.4th 95, 104 (2d Cir. 2022)).

*Second*, the Court held that Plaintiffs failed to plead scienter as to VWAG. Op. 44. Under settled Fourth Circuit law, a plaintiff "must allege facts that support a strong inference of scienter with respect to at least one authorized agent of the corporation" to pursue a securities fraud claim against a corporate defendant. *Yates* v. *Municipal Mortg. & Equity, LLC*, 744 F.3d 874, 885 (4th Cir. 2014) (quoting *Matrix Cap. Mgmt. Fund, LP* v. *BearingPoint, Inc.*, 576 F.3d 172, 182 (4th Cir. 2009)). Yet the only individuals mentioned in the First Amended Complaint were employees of *VWGoA*, not *VWAG*. And the Court held that Plaintiffs offered no basis to "attribute the severe recklessness of the Individual Defendants to Volkswagen AG." Op. 44.

After explaining each deficiency in the First Amended Complaint, the Court gave Plaintiffs 14 days to move to amend, and instructed them to "clearly identify all proposed amendments to the Amended Complaint." Op. 61. Plaintiffs now contend that the sparse new allegations in their Proposed Second Amended Complaint demonstrate that VWAG "can be held liable for the alleged false statements" made during VWGoA's marketing campaign. Plaintiffs' Memorandum of Law in Support of Their Motion For Leave to Amend The Class Action Complaint ("Pltfs' Br.") at 8, ECF No. 53.

To try to plead a claim against VWAG, Plaintiffs' motion focuses on three new allegations, which they claim plausibly allege that *VWAG* made misstatements during the "Voltswagen" marketing campaign. But the first of those allegations—that VWAG supposedly posted a VWGoA press release on one of its websites—is not plausible. Plaintiffs claim to have discovered this information through an "internet search," but the only link that they cite to support that search does not contain the press release. And, in any event, that single allegation is plainly insufficient to state a claim under *Janus*, which held that "attribution within a statement . . . is strong evidence that [a] statement was made by—*and only by*—the party to whom it was attributed." 564 U.S. at 142 (emphasis added). Here, the press release clearly attributed the "Voltswagen" name change to VWGoA alone.

The second allegation Plaintiffs add—that VWAG confirmed that VWGoA's "Voltswagen" marketing campaign was an April Fools' Day joke—similarly sheds no light on whether VWAG, at the start of the campaign, "provided final approval over the press release and its details." Op. 33. In fact, this allegation is not new at all. Plaintiffs made a similar argument in opposing Defendants' motion to dismiss, arguing that VWAG was the "maker" of statements during the "Voltswagen" campaign because "a VWAG official affirmatively took responsibility for" the joke by explaining, after the fact, that "[t]he whole thing [was] just a marketing action to get people talking." Plaintiffs' Opposition to Defendants' Motion to Dismiss at 16, ECF No. 33 (citing Amended Compl. ¶ 123). The Court has already rejected that argument, Op. 33-34, and Plaintiffs offer no reason for a different result the second time around.

Finally, Plaintiffs allege that "the public attributed the misstatements to Volkswagen AG." Pltfs' Br. 2, 8. Plaintiffs point to no authority holding that public sentiment is relevant to VWAG's "ultimate authority" over the "Voltswagen" marketing campaign. And even

-3-

if it were, all of the misstatements alleged in the Proposed Second Amended Complaint were clearly attributable to only VWGoA.

Notably, Plaintiffs do not contest—or even mention—the Court's separate holding on scienter. The Proposed Second Amended Complaint does not allege any corporate agent of VWAG acted with scienter, nor does it offer new facts that would support attributing the scienter of any VWGoA employee to VWAG. As a result, even if Plaintiffs could show that VWAG was the "maker" of a misstatement, they still have not pled "a plausible theory of liability ascribed to" VWAG, Op. 52, and therefore cannot maintain a claim based on unsponsored ADRs against any Defendant.

"A proposed amendment is . . . futile if the claim it presents would not survive a motion to dismiss." *Save Our Sound OBX, Inc.* v. *North Carolina Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (citing *Perkins* v. *United States*, 55 F.3d 910, 917 (4th Cir. 1995)). Because Plaintiffs' Proposed Second Amended Complaint would not survive a motion to dismiss—and therefore is futile—the Court should deny leave to amend and dismiss the Complaint with prejudice.

**ARGUMENT**

The Court dismissed Plaintiffs' First Amended Complaint because Plaintiffs did not allege the required connection between their transactions in unsponsored ADRs and VWGoA's "Voltswagen" April Fools' Day marketing campaign. As the Court ruled, this connection was lacking because "Plaintiffs have not adequately demonstrated that Volkswagen AG may be held liable" for any statement made during the "Voltswagen" campaign. Op. 52. Given that holding, Plaintiffs can show that their amendment would not be futile only if it alleges new facts establishing VWAG's liability for the "Voltswagen" campaign.

-4-

Plaintiffs' Proposed Second Amended Complaint does not clear that hurdle. Taking every plausibly pled allegation in the Proposed Second Amended Complaint as true, Plaintiffs still fail to allege any facts sufficient to plead that VWAG was "the entity with authority over the content of [those] statement[s] and whether and how to communicate [them]." *Janus*, 564 U.S. at 144. Instead, Plaintiffs point to allegations suggesting, at best, only that VWAG republished a VWGoA press release associated with the marketing campaign on one of its corporate websites or later communicated accurate information to the press, *i.e.*, that VWGoA was not changing its name. Moreover, Plaintiffs do not explain how their new allegations would address the Court's holding that they failed to plead scienter as to VWAG. The Proposed Second Amended Complaint identifies no VWAG official who allegedly acted with intent to deceive investors, nor does it explain why the Court should attribute the mental state of VWGoA employees involved in the marketing campaign to VWAG.

Moreover, none of Plaintiffs' new allegations show any connection between VWAG and unsponsored ADR transactions. Although the Court previously accepted Plaintiffs' allegation that VWAG may have "approve[d] of the unsponsored ADR program," it did so even though Plaintiffs relied solely on general allegations that had nothing to do with VWAG, such as "the nature of the OTC markets in which the ADRs trade," and a letter submitted by a "depositary bank[] offering the ADRs" more than a decade ago. Op. 49-50. That decision broke from the position of the Securities and Exchange Commission, *see Brief for the United States as Amicus Curiae* at 16, *Toshiba Corp.* v. *Automotive Indus. Pension Tr. Fund*, No. 18-486 (U.S. May 20, 2019), by putting the onus on Defendants to "expressly disclaim[] any responsibility for ADR programs," Op. 50.

I.     **The Proposed Amendments Do Not Allege That VWAG Was the "Maker" of Any Statement.**

Under *Janus*, "the maker of a statement is the person or entity with ultimate authority over the statement." 564 U.S. at 142. Because the Private Securities Litigation Reform Act requires securities fraud plaintiffs to "specify each statement alleged to have been misleading," 15 U.S.C. § 78u-4(b), the inquiry under *Janus* focuses on the particular misstatements identified in a plaintiff's complaint. In *Janus*, the Supreme Court held that a mutual fund investment advisor was not the "maker" of statements included in prospectuses filed by its client, even though it was "significantly involved in preparing the prospectuses." 564 U.S. at 148. The Court explained that "[o]ne who prepares or publishes a statement on behalf of another is not its maker," *id.* at 142, and that "attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—*and only by*—the party to whom it is attributed." 564 U.S. at 142-143 (emphasis added).

Here, Plaintiffs' Amended Complaint identified four alleged misstatements: (i) the *VWGoA* "draft" press release issued on March 29, 2021 referencing the one letter name change of VWGoA; (ii) the *VWGoA* press release issued on March 30, 2021 communicating the same message; (iii) statements by two *VWGoA* employees made to reporters regarding the name change; and (iv) a post on *VWGoA*'s Twitter account announcing the name change. Amended Compl. ¶ 152.

As the Court recognized, under a straightforward application of *Janus*, VWAG made none of those statements. Op. 33-34. The statements in the VWGoA press releases were specifically attributable to VWGoA, the only entity that was purportedly going to change its name from "Volkswagen" to "Voltswagen." The releases were issued by VWGoA, quoted VWGoA's then-CEO, and began: "Today, **Volkswagen Group of America**, is unveiling the official change

of its U.S. brand name from *Volkswagen of America* to *Voltswagen of America*." Amended Compl. ¶ 150 (emphasis added). As for the statements to reporters, Plaintiffs' Amended Complaint did not identify a single employee of VWAG who communicated with the press at any point during the marketing campaign. Instead, the only specific allegation in the Amended Complaint concerned a VWGoA employee. *Id*. ¶ 112; *see id*. ¶ 36 (describing Mark Gillies as VWGoA's "acting head of communications during the Class Period"). Finally, the Twitter post included in the Complaint was posted by "Volkswagen USA," not the German parent. *Id*. ¶ 114. Based on those allegations—which showed that the "Voltswagen" joke was communicated by and attributed to VWGoA alone—the Court held that Plaintiffs "ha[d] not sufficiently alleged an actionable securities fraud claim against Volkswagen AG." Op. 34.

Plaintiffs contend that three new allegations in their Proposed Second Amended Complaint demonstrate that their proposed amendment would not be futile here. But none addresses the basis for the Court's dismissal of the Amended Complaint.

*First*, Plaintiffs allege that "[VWAG] published the 'draft' press release on its global media website, called Volkswagen Newsroom." Exhibit B to Motion for Leave ("Proposed Second Amended Compl.") ¶¶ 6, 113, 156. That allegation is not plausible. Plaintiffs claim that they recently learned of VWAG's supposed website post from "an internet search." Proposed Compl. ¶ 156. But the only website link cited in the relevant paragraph of the Proposed Second Amended Complaint includes no record of such a post; instead it links to a webpage that says "[p]age not found[.]"[1] It is telling that Plaintiffs cannot identify any support for VWAG's alleged

---

[1] *See* Proposed Compl. ¶ 156 (citing https://volkswagen-newsroom.com/en/press-releases/volkswagen-of-america-announces-name-change-to-voltswagen-6652.).

post, even though the Proposed Second Amended Complaint is full of quotes and screenshots from other websites. *See, e.g.*, Proposed Compl. ¶ 117, 123.

Plaintiffs also claim that "[m]edia reports confirmed that the announcement about the name change was published on Volkswagen AG's media site." Proposed Compl. ¶ 113 (Mike Snider, *A Day After Volkswagen Said It Was Changing Its Name to 'Voltswagen,'" Company Now Calls it a Joke*, USA Today (March 30, 2021)). But the cited article does not mention any website operated *by VWAG*. Instead, it refers only to a "media site," presumably the "U.S. media site" operated by VWGoA that publishes its press releases. Although Plaintiffs' confuse the VWGoA "media website" and the "Volkswagen Newsroom," Proposed Compl. ¶ 156, those are different sites: VWGoA's "media site" collects press releases, while its "Newsroom" site collects stories about the company. And critically, both of those sites are operated *by VWGoA* and are not the same as *VWAG's* "Newsroom" site.[2] Therefore, Plaintiffs' allegation that the post appeared on the "Volkswagen Newsroom" does not support the claim that VWAG published the press release.

In any event, that unsupported allegation is irrelevant. *Janus* clearly held that "[o]ne who prepares or publishes a statement on behalf of another is not its maker." 564 U.S. at 142. And following that decision, courts have repeatedly rejected claims alleging that a defendant was a "maker" because it helped to prepare or disseminate a statement. In *Thorpe* v. *Walter Inv. Mgmt., Corp.*, 111 F.Supp.3d 1336, 1356 (S.D. Fla. 2015), for example, the district court rejected the plaintiff's argument that defendants who allegedly incorporated the false statements of another

---

[2] Both VWAG and VWGoA maintain "Newsroom" sites that collect various articles about the respective companies. See https://www.vw.com/en/newsroom.html (VWGoA); https://www.volkswagen-newsroom.com/en (VWAG). VWGoA also maintains its own "Media site" that is uses to post its press releases. See https://media.vw.com/en-us/. "A court may take judicial notice of information publicly announced of a party's web site, so long as the web site's authenticity is not in dispute." *Jeandron* v. *Bd. of Regents of Univ. Sys. of Md.*, 510 Fed. Appx. 223, 227 (4th Cir. 2023).

-8-

into their company's 8-K filing were the "makers" of those statements. In doing so, the district court reasoned that "cull[ing] together and disseminat[ing] information to the public that turned out to be false [is] insufficient to support a finding that a defendant is the maker of the alleged misrepresentation." Similarly, in *Noto* v. *22nd Century Group*, 35 F.4th 95, 104 (2d Cir. 2022), the Second Circuit rejected a claim against defendants who allegedly paid authors to write articles promoting their company's stock on the ground that plaintiffs failed to allege that defendants "wrote the articles [or] controlled what the author put into the articles." As those decisions demonstrate, Plaintiffs cannot pursue a claim against VWAG based solely on its alleged republication of VWGoA's press release. Instead, they must allege facts showing that VWAG exercised "ultimate authority" over the contents of that release. They have not done so.

*Second*, Plaintiffs point to various after-the-fact statements by VWAG that supposedly show that "[VWAG] took responsibility for issuing the fraudulent statements by admitting the name change was a joke." Pltfs' Br. 8.[3] As Defendants previously explained in responding to the Amended Complaint, however, VWAG's statements to various news outlets— including its statement to *The Wall Street Journal*, Proposed Compl. ¶ 176—***accurately*** state that VWGoA was not changing one letter in its name. *See* Defendants' Reply in Support of Motion to Dismiss Amended Complaint at 14, ECF No. 36. Those statements therefore do not support the inference that VWAG—as opposed to VWGoA—made the allegedly misleading statements in the

---

[3] Those after-the-fact allegations concern truthful statements to reporters. *See* Proposed Compl. ¶¶ 14 ("[A] Volkswagen AG official stated 'It's a premature April Fools' joke. It's part of a marketing campaign for the ID.4. There will be no name change.' "), 16, 114, 130, 168, 176. Plaintiffs also include a number of new allegations about posts to a "Volkswagen" Twitter account *after* the April Fools' Day joke was revealed. *See* Proposed Compl. ¶¶ 15 (post stating that the "Voltswagen" marketing campaign got "people talking about electric driving and our ID.4"), 23, 132. Those posts do not reflect that VWAG exercised ultimate authority over the marketing campaign.

first place. If anything, they demonstrate that VWAG shared truthful information in response to journalists' questions.

It is also not surprising that a parent corporation would communicate with the press about matters involving its subsidiary. *See In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2022 WL 4085677, at *21 (S.D.N.Y. Sept. 2, 2022) ("Rio's ability—as a majority stockholder—to influence Turquoise Hill's statements is distinct from showing that Rio, in fact, exerted 'ultimate control' over the statements at issue in this case.") (quoting *Janus*, 564 U.S. at 143). This Court has already rejected Plaintiffs' attempt to satisfy *Janus* by alleging nothing more than VWAG's ordinary "monitoring functions" as a parent corporation, Op. 33, and Plaintiffs' new allegations do not support a different result.

*Third*, Plaintiffs contend that VWAG was the "maker" of the misstatements alleged in the Proposed Second Amended Complaint because "the public attributed the misstatements to Volkswagen AG." Pltfs' Br. 2, 8; *see* Proposed Compl. ¶¶ 18, 170. Plaintiffs cite no authority for that proposition. In fact, the only decision they cite includes no discussion of whether a defendant was the "maker" of a statement, discusses an unrelated holding from *Janus*, and does not even include the passage quoted by Plaintiffs. *Masterson v. Commonwealth Bankshares, Inc.*, 2013 WL 6917423, at *11-14 (E.D. Va. Dec. 27, 2013), *report and recommendation adopted*, 2 F. Supp. 3d 824 (E.D. Va. 2014). In any event, the press releases were clearly issued by and attributed to *VWGoA*, the statements to reporters were made by a *VWGoA* employee, and the Twitter post was to *VWGoA*'s account.[4]

---

[4] Plaintiffs' Proposed Second Amended Complaint also includes a quote from a spokesperson for the Associated Press claiming that "the Associated Press was repeatedly assured by Volkswagen that its U.S. subsidiary planned a name change." Proposed Compl. ¶ 161 (quoting David Bauder, *An Unwelcome Prank: Volkswagen Purposefully Hoodwinks Reporters*, Associated Press (March 31, 2021)). That isolated statement simply confirms that it was the "U.S. subsidiary," not VWAG,

Simply put, Plaintiffs' proposed amendments do not address the core deficiency in their Complaint: the complete absence of allegations that VWAG exercised "ultimate authority" over any misstatement made during VWGoA's "Voltswagen" marketing campaign.

## II. The Proposed Amendments Do Not Allege That VWAG Acted With Scienter.

Plaintiffs' inability to plead that VWAG made any statement in connection with the "Voltswagen" marketing campaign is a sufficient ground to deny their motion to amend. Plaintiffs proposed amendments are also futile because they ignore the Court's holding that Plaintiffs failed to plead scienter as to VWAG. That defect alone prevents Plaintiffs from establishing VWAG's liability and, "[w]ithout a plausible theory of liability ascribed to the issuer, Plaintiffs' purchase or sale of Volkswagen ADRs cannot be said to 'touch[]' or 'coincide' with the alleged false statements of the Individual Defendants and VWGoA." Op. 52.

In the Fourth Circuit, a securities fraud plaintiff can establish that a corporation acted with scienter only by "alleg[ing] facts that support a strong inference of scienter with respect to at least one authorized agent of the corporation." *Yates*, 744 F.3d at 885 (quoting *Matrix Cap. Mgmt. Fund*, 576 F.3d at 182). There is no dispute that Plaintiffs do not allege that any corporate agent *of VWAG* acted with scienter, and that alone is dispositive of their claims against VWAG.

Plaintiffs have no basis to try to plead their claim through the concept of "collective scienter," whereby "the cumulative knowledge of [a corporation's] directors and officers" can be imputed to a corporation. *Nordstrom, Inc.* v. *Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995); *see* Op. 43. "[C]ollective corporate scienter" applies in only "exceedingly rare

---

that announced the name change, and the same article goes on to explain that "[t]he AP wrote a story about [the April Fools' Day marketing campaign] Monday after its reporter was assured by Mark Gillies, *a company spokesman in the United States*, that it was serious." Bauder, *An Unwelcome Prank*, *supra* (emphasis added). Mr. Gillies is an employee of VWGoA, not VWAG. Proposed Compl. ¶ 40.

circumstances," when "a statement is so 'dramatic' [and] of such core importance" to a corporation that it is appropriate to infer knowledge to a corporation without establishing the scienter of any specific corporate agent. *Jackson* v. *Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020) (citation omitted). Both decisions cited by the Court expressed skepticism of the doctrine. *See Nordstrom*, 54 F.3d at 1435 (emphasizing that "there is no case law supporting an independent 'collective scienter' theory"); *Makor Issues & Rights, Ltd.* v. *Tellabs, Inc.*, 513 F.3d 702, 708 (7th Cir. 2008) (holding that "[t]o establish corporate liability for a violation of Rule 10b–5 requires looking to the state of mind of the individual corporate official or officials who make or issue the statement . . . rather than generally to the collective knowledge of all the corporation's officers").

Yet Plaintiffs have not even attempted to argue that their proposed amendments would support "collective corporate scienter" on these facts. And Plaintiffs would face an uphill road in making that argument, as Defendants are unaware of any case that has discussed the theory in a situation where the knowledge of employees in one corporation (VWGoA) would be imputed to a different corporation (VWAG). As the Court correctly found, because "Plaintiffs have not sufficiently pleaded Volkswagen AG exercised 'ultimate authority' over VWGoA, this Court is unable to attribute the severe recklessness of the Individual Defendants to Volkswagen AG by way of a 'collective scienter' theory." Op. 44.

Plaintiffs' failure to engage with this Court's reasoning on scienter is dispositive. The Court clearly explained that, "[w]ithout a plausible theory of liability ascribed to" VWAG, Plaintiffs' claims based on unsponsored ADRs referencing VVAG's German-traded stock could not move forward against any Defendant. For this reason alone, Plaintiffs' proposed amendment should be denied as futile.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' proposed amendment and dismiss the operative First Amended Complaint with prejudice.

| MCGUIREWOODS LLP | SULLIVAN & CROMWELL LLP |
|---|---|
| */s/ Garrett H. Hooe* <br> Garrett H. Hooe (VSB No. 83893) <br> Gateway Plaza <br> 800 Canal Street <br> Richmond, Virginia 23219 <br> Tel: 804-775-1065 <br> Fax: 804-698-2079 <br> ghooe@mcguirewoods.com | Robert J. Giuffra, Jr. (*pro hac vice*) <br> Sharon L. Nelles (*pro hac vice*) <br> 125 Broad Street <br> New York, NY 10004 <br> Tel: 212-558-4000 <br> Fax: 212-558-3558 <br> giuffrar@sullcrom.com <br> nelless@sullcrom.com <br><br> Laura Kabler Oswell (*pro hac vice*) <br> 1870 Embarcadero Road <br> Palo Alto, California 94303 <br> Tel.: 650-461-5600 <br> Fax: 650-461-5700 <br> oswelll@sullcrom.com <br><br> Daniel J. Richardson (VSB No. 94961) <br> 1700 New York Avenue NW <br> Washington, D.C. 20006 <br> Tel: 202-956-7500 <br> Fax: 202-293-6330 <br> richardsond@sullcrom.com <br><br> *Counsel for Defendants Volkswagen AG, Volkswagen Group of America, Inc., Scott Keogh, and Mark Gillies* |

April 11, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2023, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF filing system, which will send notification of electronic filing (NEF) to all counsel of record.

*/s/ Garrett H. Hooe*
Garrett H. Hooe (VSB No. 83983)
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel: 804-775-1065
Fax: 804-698-2079
ghooe@mcguirewoods.com

*Counsel for Defendants Volkswagen AG, Volkswagen Group of America, Inc., Scott Keogh, and Mark Gillies*