**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| *In re Volkswagen AG Securities Litigation* | **Case No. 1:22-cv-00045-RDA-TCB** |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 14, 2023 ORDER
GRANTING DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................4

ARGUMENT......................................................................................................................5

   A.  Plaintiffs' Motion for Reconsideration is Proper..............................................................5

   B.  The Court Should Grant Plaintiffs' Motion for Reconsideration ...................................7

   C.  The Court Should Deny Defendants' Improper Request to Reconsider Its Opinion on Scienter.........................................................................................................................12

CONCLUSION ...............................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Finn v. Spiker*,
    2005 WL 4663687 (E.D. Va. 2005) ....................................................................................... 3

*Huff v Attorney General of Virginia*,
    2009 WL 1160174 (E.D. Va. 2009) ...................................................................................... 3

*In re Building Materials Corp. of America Asphalt Roofing Shingle Products Liability Litig.*,
    2013 WL 3337833 (D.Sc. July 2, 2013) .............................................................................. 3

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135, 131 S. Ct. 2296, 180 L. Ed. 2d 166 (2011) ......................................... 4, 5

*June v. Thomasson*,
    2017 WL 3642944 (D. Md. Aug. 24, 2017)......................................................................... 3

*Matter of Vulcan Constr. Materials, LLC*,
    433 F. Supp. 3d 816 (E.D. Va. 2019)................................................................................... 2

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006) ............................................... 4

*Netscape Communs. Corp v. Valueclick, Inc.*,
    704 F. Supp. 2d 544 (E.D. Va. 2010)................................................................................. 2

*Ottman v. Hanger Orthopedic Grp., Inc.*,
    353 F.3d 338 (4th Cir. 2003)............................................................................................... 10

*S.E.C. v. Texas Gulf Sulphur Co.*,
    401 F.2d 833 (2d Cir. 1968)................................................................................................. 1

*Singer v. Reali*,
    883 F.3d 425 (4th Cir. 2018)................................................................................................ 11

*Stoyas v. Toshiba Corp.*,
    424 F. Supp. 3d 821 (C.D. Cal. 2020)................................................................................ 5

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...................................................................................................... 10, 11

*U.S. S.E.C. v. Pirate Investors LLC*,
    580 F.3d 233 (4th Cir. 2009)........................................................................................ 1, 4, 6

*Wilson v. B&B Properties,*
   2021 WL 4583644 (D. Sc. Oct 5, 2021) ........................................................................................ 3

*Yates v. Mun. Mortg. & Equity, LLC,*
   744 F.3d 874 (4th Cir. 2014) ...................................................................................................... 10

## Statutes

42 U.S.C.A. § 1983 ........................................................................................................................ 3

## Rules

Fed. R. Civ. P. 54 ...................................................................................................................... 2, 3

iii

Lead Plaintiff Laszlo Rozsavolgyi and named Plaintiff Thomas Wells ("Plaintiffs") respectfully submit this reply memorandum of law in further support of their motion for reconsideration of this Court's March 14, 2023 Memorandum Opinion and Order granting Defendants' Motion to Dismiss the Amended Complaint.

## INTRODUCTION

In the Court's March 14, 2023 Opinion and Order ("Opinion") it held that Plaintiffs' Complaint adequately alleged falsity, scienter, and loss causation, VWAG's connection to Plaintiffs' ADR transactions, and that the alleged misstatements coincide with Plaintiffs' ADR purchases. The Court also held that VWAG did not make a false statement under *Janus* and that Plaintiffs' purchases cannot be considered to "coincide" with VWGoA's and the Individual Defendant's false statements unless VWAG can also be held liable. Under controlling Fourth Circuit precedent, the requirement that the purchase or sale of securities occur "in connection with" the alleged false statements does ***not*** require a securities trading relationship between the plaintiff purchasers and the individuals/entities responsible for making the false statements. *U.S. S.E.C. v. Pirate Investors LLC*, 580 F.3d 233, 244-52 (4th Cir. 2009). Instead, "Rule 10b-5 is violated whenever assertions are made…in a manner reasonably calculated to influence the investing public…" *S.E.C. v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 860 (2d Cir. 1968). Plaintiffs respectfully request that the Court reconsider its holding that Plaintiffs have not satisfied the "in connection with requirement," and cannot bring a claim as to VWGoA and the Individual Defendants without a theory of liability as to VWAG, because it does not comport with Fourth Circuit authority. Relatedly, so long primary as liability under 10(b) attaches to VWGoA and the Individual Defendants, VWAG is secondarily liable under 20(a) of the Exchange Act, given that

the Court's Opinion that "unlike in *Nortel* the issuer here is alleged to control the entity responsible for making the false statements." (Opinion at 47).

In their Opposition ("Opp." (Dkt. 57)) Defendants fail to cite any cases holding that a subsidiary of an issuer is free make false statements affecting the parent-issuer's publicly traded securities if there is no plausible theory of liability as to the issuer. Instead, Defendants rely on their own extratextual interpretation of the Court's Opinion, drawing connections where none exist. Defendants also improperly ask the Court to reconsider its well-reasoned and thorough Opinion on scienter. Additionally, Defendants spuriously assert that Plaintiffs' motion is improper because the Court permitted Plaintiffs to file a motion to amend.  For the reasons set forth herein and in Plaintiffs' opening Motion, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and decline Defendants' request to reconsider its Opinion as to scienter.

## ARGUMENT

### A.  Plaintiffs' Motion for Reconsideration is Proper

Defendants misleadingly assert that "Plaintiffs cannot move for reconsideration following a dismissal without prejudice." As Defendants correctly point out, the Opinion is not a final judgment because the Court's dismissal was without prejudice. Therefore, Plaintiffs' motion for reconsideration "does not fall within the language of…Rule 59(e)" but the more liberal standard of Rule 54(b), which "'expressly provides a district court to revise interlocutory orders, such as an order denying a motion to dismiss, prior to final judgment.'" *Matter of Vulcan Constr. Materials, LLC*, 433 F. Supp. 3d 816, 820 (E.D. Va. 2019) *quoting* F.R.C.P. 54(b). "Under Rule 54(b), reconsideration is not limited to 'extraordinary circumstances,' as is generally required under Rule 59(e). Rather, the goal is simply to 'reach the correct judgment under the law.'" 433 F. Supp. 3d at 820 *quoting Netscape Communs. Corp. v. Valueclick, Inc.*, 704 F. Supp. 2d 544, 547 (E.D. Va.

5

2010). Nevertheless, in deciding a motion for reconsideration under Rule 54(b) "the Court is 'guided by the [general principles' of Rule 59(e). *Id.* The fact that Plaintiffs' Motion references Rule 59 as opposed to Rule 54 does not alter the substance of Plaintiffs' Motion, and the Court can (and should) treat the motion as a motion for reconsideration under Rule 54. *See, e.g., June v. Thomasson*, 2017 WL 3642944 at *3 (D. Md. Aug. 24, 2017)(applying Rule 54(b) to motion brought under Rule 59(e)).

There is nothing improper about simultaneously filing a motion for reconsideration and a motion to amend. *See, e.g., Wilson v. B&B Properties* 2021 WL 4583644 (D. Sc. Oct 5, 2021) (considering motion for reconsideration and to amend the complaint simultaneously); *In re Building Materials Corp. of America Asphalt Roofing Shingle Products Liability Litig.*, 2013 WL 3337833 at *2 (D.Sc. July 2, 2013) (considering motion to reconsider under Rule 59 or in the alternative to amend under Rule 15, holding that the motion "must be analyzed in two parts" because of the different legal standards that apply).[1] Here, the circumstances of this case required Plaintiffs to file this motion contemporaneous with the filing of their motion to amend to preserve their rights, given that the Court ordered Plaintiffs to file a motion to amend within 14 days of issuing its Opinion.  In addition, Plaintiffs' motion for reconsideration asks the Court to reconsider its ruling dismissing Plaintiffs 10(b) claims only as to VWGoA and the Individual Defendants, *not*

---

[1] Defendants' cases do not establish that a plaintiff cannot file a motion for reconsideration where the plaintiff may also seek to amend. There is no such rule. *Huff v Attorney General of Virginia*, 2009 WL 1160174, at *1 (E.D. Va. 2009) (Opp. at 4) concerned a *habeus* petition where the court dismissed because plaintiff had failed to exhaust his available state remedies. The court held that no manifest injustice would result from the court's order dismissing the petition because the dismissal was without prejudice. *Finn v. Spiker*, 2005 WL 4663687 at *1-2 (E.D. Va. 2005) (Opp. at 1, 3) concerned a 42 U.S.C.A. § 1983 action where the court dismissed the action of a plaintiff proceeding *in forma pauperis* because the plaintiff failed to return a form or pay a statutory filing fee. The court found plaintiff did not attempt to explain how he satisfied any of the grounds for relief under 59(e) and that he could simply refile the action given his dismissal was without prejudice.

6

the 10(b) claim as to VWAG. The proposed amendments in Plaintiffs' Second Amended Complaint pertain to VWAG. There is therefore no reason and no need to wait for another round of briefing on a motion to dismiss to address the error Plaintiffs raise in their reconsideration motion. To the contrary, it would be more efficient for the Court and the parties to address only the narrow issue of VWAG's liability under *Janus* in the briefing on the anticipated motion to dismiss the Proposed Second Amended Complaint.

### B. The Court Should Grant Plaintiffs' Motion for Reconsideration

"Under Supreme Court case law, fraudulent activity meets the 'in connection with' requirement of § 10(b) whenever it 'touches" or "coincides' with a securities transaction. *U.S. S.E.C. v. Pirate Inv. LLC*, 580 F.3d 233, 244 (4th Cir. 2009), *quoting Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006) ("Under our precedents, it is enough that the fraud alleged 'coincide' with a securities transaction-whether by the plaintiff or by someone else."). Further, whether a corporate entity like VWAG makes a false statement for purposes of *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 131 S. Ct. 2296, 180 L. Ed. 2d 166 (2011) is wholly unrelated to whether that company "controls" the entity that made the false statement, for purposes of holding the corporate entity liable as a control person under §20(a) of the Securities Exchange Act. *Janus* in no way created a rule that a company (*i.e.* VWAG here) must *also* make a statement to be liable as a controlling person of the primary violator (*i.e.* VWGoA and the Individual Defendants here). *Janus*, at 564 U.S. 135, fn. 5 ("Although First Derivative argued below that JCG violated Rule 10b-5 by making the statements in the prospectuses, *it now seeks to hold JCG liable solely as a control person of JCM under 20(a).* The only question we must answer, therefore, is *whether JCM made the misstatements*. *Whether First Derivative has stated a claim against JCG as a control person depends on whether*

*it has stated a claim against JCM*. The same is true here. And, in the Opinion, the Court held that the Complaint sufficiently alleged that VWAG controls VWGoA. (Opinion at 47). Therefore, so long as the Court finds that the Complaint pleads the elements of a §10(b) claim as VWGoA and the Individual Defendants it can find VWAG liable under §20(a)

Knowing that they have no legal grounds upon which to base their argument, Defendants rely on their own extratextual interpretation of the Court's Opinion, drawing connections where none exist. With no support whatsoever, Defendants assert that "[t]he Court's analysis was grounded in the unprecedented theory of liability alleged in the Complaint." The Court's Opinion neither states nor implies this. In furtherance of this spurious interpretation of the Court's Opinion, Defendants cite to *Stoyas v. Toshiba Corp.*, 424 F. Supp. 3d 821, 826 (C.D. Cal. 2020) declaring that it is the only case "that has ever permitted a securities claim to move forward based on unsponsored ADRs." (Opp. at 5), and [that] Defendants are not aware of any court that has done so in a suit based on the conduct of a U.S. subsidiary, rather than a foreign issuer." (Opp. at 5). That Defendants base their interpretation of the Opinion on the fact that not many securities fraud cases involve unsponsored ADRs demonstrates that their interpretation of the Court's Opinion is erroneous and self-serving.

The Court did not hold that that a foreign issuer cannot be held liable for the actions of its subsidiary because its ADRs are unsponsored. Instead, the Court held that the foreign issuer (VWAG) could not be held liable for the conduct of its U.S. subsidiary (VWGoA) because it did not make statements pursuant to the Supreme Court's standard set forth in *Janus*. These are two distinct issues, and the Court did not base its Opinion on the fact that the ADRs were unsponsored. Indeed, the Court clearly rejected Defendants' argument that "VWGoA's statements were not made 'in connection with' Plaintiffs transaction in ADRs because those ADRs are unsponsored"

8

(Opinion at 15, 24). In so doing the Court held that "Plaintiffs have sufficiently pleaded Volkswagen's 'connection to the ADR transactions'" (Opinion at 49). Then, in analyzing the "in connection with" requirement, the Court held: "Plaintiffs' allegations provide a plausible basis that the alleged misstatement 'touches' or 'coincides' with the 'purchase or sale of any other security in the United States.'" Opinion at 51, *quoting SEC v. Pirate Investors, LLC* 580 F.3d 233 at 244 (4th Cir. 2009).

Next, Defendants assert that "as the Court understood it, it would undermine the legal distinction between parent corporations and their subsidiaries if a plaintiff could pursue a claim based entirely on statements made by a U.S. subsidiary but securities related only to a foreign parent. That is particularly true here, as the alleged misstatements had nothing to do with VWAG or ADRs…" (Opp. at 7). But the Court noted that VWGoA and the Individual Defendants' misstatements *did* affect VWAG ADRs: "given the alleged seriousness with which the market perceived the name change, it is entirely reasonable that investors would have relied upon the press release [ ] at least one securities analyst published a bullish report on Volkswagen following the publication of the press release)." (Opinion at 52). Further, the Court did not hold that pursuing a claim against a subsidiary based on securities related to a foreign parent would undermine the legal distinction between the parent and subsidiary. Again, this is Defendants' interpretation. Indeed, such an interpretation would conflict with the well-settled rule that there need not be a trading relationship between the plaintiff purchasers and the individuals responsible for making the false statements.

In attempting to distinguish the cases Plaintiffs cite in their Motion, Defendants rely on *SEC v. Pirate Investors LLC*, 580 F.3d 233 (4th Cir. 2009) asserting that unlike in *Pirate*, Plaintiffs' claims "check none of the boxes" in satisfying the "in connection with" requirement.  (Opp. at 9)

But as the Court held- quoting authority from the Supreme Court, Fourth, Ninth, Second, and Third Circuits- this is untrue:

> *[N]one of [the Pirate factors] are considered mandatory in satisfying the in connection with requirement; <u>they merely exist to guide the inquiry</u>. A close fit with one factor may well be enough for a fraud to result in 10(b) liability*. Where the fraud alleged involves public dissemination in a document on which an investor would presumably rely, the in connection with requirement is generally met by means of dissemination and the materiality of the misrepresentation or omissions. *It is irrelevant that the misrepresentations were not made for the purpose or object of influencing the investment decisions of market participants.*

Opinion at 46 (internal citations and quotations omitted, cleaned up),

And, in the Opinion the Court ruled that Plaintiffs satisfied the most important factor, holding, "given the alleged seriousness with which the market perceived the name change, it is entirely reasonable that investors would have relied upon the press release [ ] at least one securities analyst published a bullish report on Volkswagen following the publication of the press release)" (Opinion at 51-52 *citing Pirate*).

An article authored by a Business Law Professor shortly after the Court issued the Opinion confirms Plaintiffs' interpretation of the legal error in the Opinion. Tulane University Law School Business Law professor and securities law expert Ann Lipton wrote about the Opinion on March 18, 2023.[2] <u>First</u>, Professor Lipton noted that the Opinion found that Plaintiffs alleged a domestic transaction.[3] <u>Second</u>, Professor Lipton noted that the Court employed *Janus*, in determining the "potential liability of the Volkswagen parent" and held that Plaintiffs had not shown sufficient facts to allege VWAG exercised ultimate authority of the statements issued by VWGoA.[4] <u>Third</u>,

---

[2] Lipton, Ann. *There's no joking in securities law*, Business Law Prof Blog, March 18, 2023. Available at: https://lawprofessors.typepad.com/business_law/2023/03/theres-no-joking-in-securities-law.html.
[3] *Id.* fn. 2.
[4] *Id.*

Professor Lipton noted that the Opinion held VWGoA and its officers "acted at least recklessly when issuing the press release, their scienter could be attributed to VWGoA and that plaintiffs had established materiality and loss causation."[5] Fourth, Professor Lipton noted that the Opinion held that given the relationship between the parent and the subsidiary, the statements by VWGoA were not so attenuated from the securities of Volkswagen as to eliminate 10(b) liability (citing Op. at 67).[6] Fifth, Professor Lipton noted that the Opinion held that Plaintiffs had plausibly alleged that the misstatements "touch or coincide" with "the purchase or sale of any other security in the United States."[7] Sixth, Professor Lipton noted that the Opinion held that the statements were distributed in a medium upon which investors rely.[8] Finally, Professor Lipton discussed the inconsistency between the Court's Opinion on the above and the result, asking rhetorically, "But did the claims against the VWGoA defendants survive? They did not." Professor Lipton quotes the portion of the Court's Opinion Plaintiffs ask the Court to reconsider and after doing so states:

> I... do not follow. The court seems to be hung up on *Volkswagen's* liability, when the question of the liability of VWGoA and its officers is distinct. **Why should VWGoA's liability for false public statements turn on whether Volkswagen parent is liable? We have three actors: VWGoA, its CEO, and its head of tech, all of whom, with scienter, made false statements about Volkswagen's business – about, the court found, Volkswagen's securities – in a medium on which investors would (and did) rely.** It's now well-established – the court even *says*[9] in its opinion, at *65-66 – that actors *other than issuers* can be liable for issuing fraudulent statements in connection with the issuers' securities. Analysts, auditors, brokers, all might lie about a company's securities; the company may be entirely innocent, but that does not absolve the speaker. If I adopt some kind of pseudonymous identity and go online and make false statements about a publicly traded security, I would surely expect the SEC to come after me, even if the issuer had nothing to do with it.

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] Italicized emphasis is original.

11

Nonetheless, the court seemed to hold, that logic only extends to actors who are *independent* of the issuer. It does not extend to actors who are *related* to the issuer, such as wholly owned subsidiaries. Those speakers, uniquely, get a free pass.

In other words, VWGoA and its officers escape liability because there is both *too much* control by Volkswagen – it would contravene *Janus* to hold a controlled subsidiary liable for statements it actually made about its parent – and *too little*, because there was not *enough* control by Volkswagen to make Volkswagen the legal "maker" of the statements.

**Notably, the court's holding would seem to create an open season for subsidiaries to make false statements about parent companies – <u>which is particularly bizarre because, earlier in its opinion, that's exactly what the court wanted to avoid</u>:**

> For purposes of standing, Plaintiffs' fulsome allegations demonstrate the appropriateness of extending Rule 10b-5's reach to securities of a parent company, when that parent company exercises substantial involvement over the day-to-day operations of a wholly-owned subsidiary alleged to have violated federal securities laws. If this were not so, issuers exercising such concrete control over their subsidiaries would never be legally responsible for the statements of their non-publicly traded wholly-owned subsidiaries. That would reward issuers with a scapegoat mechanism through their unlisted subsidiaries to avoid § 10(b)'s remedial scheme.

Yes! I agree! But still, the court says there's no liability even for the subsidiary that made the statements, with scienter.

Quoting Opinion at 48.

Professor Lipton's analysis demonstrates that the Court should reconsider its holding.

### C. The Court Should Deny Defendants' Improper Request to Reconsider Its Opinion on Scienter

Defendants assert that the Court's holding that VWGoA and the Individual Defendants acted with scienter was "clearly erroneous." (Opp. at 11). Despite this assertion, Defendants did not move for reconsideration. The Court should reject Defendants' attempt to improperly relitigate, via an opposition brief, an issue the Court has decided on this basis alone.

The Court's decision on scienter was well-reasoned, thorough, and supported by several Fourth Circuit cases, Supreme Court precedent, authority from the Second, Seventh, Fifth and

Third Circuits, and several district court opinions from within the Fourth Circuit. (Opinion at 34-44). The Opinion's analysis on scienter spans eight pages in which the Court carefully considered- and rejected- the very arguments Defendants rehash here.

As the Court held, "At the pleading stage, alleging either intentional or severely reckless conduct is sufficient" to plead scienter. Opinion at 35 *quoting Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 884 (4th Cir. 2014). And, "to meet the standard of recklessness, the complaint must aver 'an act so highly unreasonable and such and extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff." Opinion at 36, *quoting Ottman v. Hanger Orthopedic Grp., Inc.,* 353 F.3d 338, 343 (4th Cir. 2003).

In assessing scienter and Defendants' opposing inferences as mandated by the Supreme Court's decision in *Tellabs*,[10] the Court specifically rejected Defendants' proposed inference "that no Volkswagen employee contemplated that the joke would influence investors in any way," holding "Defendants' position significantly downplays the recklessness of the stunt...The campaign no doubt sought to generate buzz and demand for Volkswagen's first electric SUV marketed in North America. ***These allegations are as close to a smoking gun as one could hope to have at the pleading stage.***" Opinion at 39. The Court further noted the benefits the fraud conferred upon Defendants, "[a] social media campaign powered by the name change announcement could help Volkswagen steal attention in the EV market away from Tesla." Opinion at 40. Further, the Court stated that "calling a deceptive tactic a 'joke' as a euphemism for intentionally lying, particularly after doubling down on the deception when probed, is exactly the sort of reckless corporate behavior Congress meant to check in enacting the Exchange Act and protecting retail investors." Opinion at 41. Finally, the Court held that Defendants' reckless

---

[10] *Tellabs Inc. v. Makor Issues & Rights, Ltd.* 551 U.S. 308 (2007).

conduct *did* mislead investors: "And as already discussed, Plaintiff and other more sophisticated market participant and observers were misled." Opinion at 42.

Defendants assert that under *Tellabs Inc. v. Makor Issues & Rights, Ltd.* 551 U.S. 308 (2007) the Court must undertake a "comparative inquiry" in assessing the inferences for and against a finding of scienter.  (Opp. at 10). But despite the comparative inquiry the Court undertook, and the Court's conclusion which is supported by caselaw and the Complaint's facts, Defendants impose that "there is only one plausible inference." (Opp. at 11). Defendants cite no controlling precedent contravening the Court's Opinion as to warrant reconsideration, and no rule of law that the Court's Opinion contradicts. Instead, Defendants merely fault the Court for not adopting their view. And again, as they did at the hearing and in their motion to dismiss, Defendants erroneously assert that to find scienter the Court was required to find that "VWGoA intended to juice the price of unsponsored VWAG ADRs for 36 hours."  (Opp. at 13).  This is simply not the law.  As the Court correctly held, even if Defendants did not intend to deceive investors, they at the very least recklessly disregarded the possibility of doing so. Accordingly, their conduct was "'so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Singer v. Reali*, 883 F.3d 425, 443 (4th Cir. 2018).  Here, there is no basis for the Court to reconsider its Opinion as to scienter.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion.


Dated: April 13, 2023

14

Respectfully submitted,


**THE ROSEN LAW FIRM, P.A.**

*/s/ Sara Fuks*
Sara Fuks (*pro hac vice)*
275 Madison Avenue, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
sfuks@rosenlegal.com
*Lead Counsel for Plaintiffs*


**THE LAW FIRM OF CARLTON F. BENNETT, PLLC**

*/s/ Carlton F. Bennett (VSB No. 18453)*
Carlton F. Bennett
120 South Lynnhaven Rd. Ste.100
Virginia Beach, VA
Tel: (757) 486-5454
cbennett@carltonbennettlaw.com
*Local Counsel for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2023, I caused the foregoing to be filed electronically with the Clerk of the Court via CM/ECF, which will send a notice of electronic filing to all registered users.


*/s/ Carlton F. Bennett (VSB No. 18453)*
Carlton F. Bennett
**THE LAW FIRM OF CARLTON F. BENNETT, PLLC**
120 South Lynnhaven Rd., Ste.100
Virginia Beach, VA 23452
Tel: (757) 486-5454
cbennett@carltonbennettlaw.com
*Local Counsel for Plaintiffs*


15