**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| *In re Volkswagen AG Securities Litigation* | **Case No. 1:22-cv-00045-RDA-TCB** |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR LEAVE TO AMEND THE AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................. 0

ARGUMENT......................................................................................................................... 1

   A.   The SAC Adequately Alleges VWAG "Made" A False Statement under Janus ......... 2

   B.   The SAC Adequately Alleges VWAG's Scienter ............................................................. 7

CONCLUSION ..................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bennett v. Berryhill*,
  2018 WL 10016165 (E.D. Va. Oct. 19, 2018) ......................................................................... 2

*Carpenters Pension Tr. Fund of St. Louis, St. Clair Shores Police & Fire Ret. Sys. v. Barclays PLC*,
  56 F. Supp. 3d 549 (S.D.N.Y. 2014) ...................................................................................... 6

*City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*,
  875 F. Supp. 2d 359 (S.D.N.Y. 2012) .................................................................................... 3

*City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.*,
  814 F. Supp. 2d 395 (S.D.N.Y. 2011) ................................................................................. 3, 4

*Dao v. Faustin*,
  402 F. Supp. 3d 308 (E.D. Va. 2019) ..................................................................................... 4

*Davis v. Piper Aircraft Corp.*,
  615 F.2d 606 (4th Cir. 1980) .................................................................................................. 2

*Howard v. Arconic Inc.*,
  2021 WL 2561895 (W.D. Pa. June 23, 2021) ........................................................................ 9

*In re Initial Pub. Offering Sec. Litig.*,
  214 F.R.D. 117 (S.D.N.Y. 2002) ............................................................................................ 1

*In re JPMorgan Chase & Co. Sec. Litig.*,
  2007 WL 4531794 (N.D. Ill. Dec. 18, 2007) ......................................................................... 9

*In re Marsh & McLennan Companies, Inc. Sec. Litig*,
  501 F.Supp.2d 452 (S.D.N.Y. 2006) ...................................................................................... 9

*In re Pfizer Inc. Sec. Litig.*,
  936 F.Supp.2d 252 (S.D.N.Y.2013) ........................................................................................ 3

*In re Pfizer Inc. Sec. Litig.*,
  2012 WL 983548 (S.D.N.Y. Mar. 22, 2012) .......................................................................... 4

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*,
  2016 WL 6110575 (N.D. Cal. 2016) ................................................................................. 6, 10

*In re Volkswagen Prods. Liability Litig.*,
  2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ................................................................. 5, 8

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135, 131 S. Ct. 2296 (2011) ................................................................. 3, 4, 6

*Noto v. 22nd Century Grp., Inc.*,
  35 F.4th 95 (2d Cir. 2022)................................................................................... 5, 6

*Valentini v. Citigroup, Inc.*,
  837 F. Supp. 2d 304. (S.D.N.Y. 2011)...................................................................... 9

**INTRODUCTION**

In the March 14 Opinion and Order the Court held "a *Janus* defense is available in a private plaintiff Rule 10b-5 case even for the parent of a wholly-owned subsidiary insofar as the entities retain independent boards and the parent is acting in a "speechwriter" assisting capacity ***rather than as a "speaker who takes credit—or blame for what is ultimately said*.'"** Opinion at 33. Based on the facts in the Amended Complaint, the Court found that "Plaintiffs have not alleged with particularity that that Volkswagen AG provided final approval over the press release and its details. Merely alleging a daily monitoring function and the participation in the preparation of public statements does not allow this Court to infer that Volkswagen AG 'collaborated with the authors to such an extent that they controlled the [press release's] publication. *Id.* The Court dismissed the claims against VWAG "on this ground alone" but stated that because Plaintiffs' 10(b) claim against VWAG "is not implausible as a matter of law, this Court will allow Plaintiffs to amend their allegations in a second amended complaint." *Id.* at 34.

Notwithstanding the Court's Opinion and the additional facts set forth in the Proposed Second Amended Complaint ("Proposed SAC, (Dkt. No. 52 Exh. A)) Defendants oppose Plaintiffs' Motion to Amend ("Motion"). Defendants do not assert that amendment is prejudicial or in bad faith, they oppose the motion solely on futility grounds.  First, Defendants' opposition ("Opp.") amounts to an argument that the amendments would not permit the complaint to survive a motion to dismiss, and the court should reject it on this basis alone and grant Plaintiffs' Motion. *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 125 (S.D.N.Y. 2002).  "[w]here … the alleged futility of the proposed amendments is really an argument that the amendments would not permit the complaint to survive a motion to dismiss, such argument would better be taken up on a motion to dismiss unless the amendments' futility is readily apparent."). In any case, Plaintiffs'

0

Proposed SAC clearly demonstrates that VWAG made the false statements the Court already held actionable in the Opinion for purposes of *Janus*.

As Defendants point out, Plaintiffs' proposed amendments are not extensive. But they are significant. The Proposed SAC, unlike the AC, alleges that VWAG itself made false statements by publishing the false and misleading Press Release (describing how the name of *its* U.S. subsidiary would change from Volkswagen to "Voltswagen") on VWAG's own news website, the contents of which VWAG represented have "been carefully checked." This allegation alone satisfies the Court's concerns under *Janus*. Defendants' assertion that this allegation is "implausible" is factually inaccurate. And Defendants' assertions as to the import of this allegation and the SAC's other additions ignores the Court's Opinion, as discussed below. Defendants also assert that the SAC does not adequately allege scienter as to VWAG.  But by addressing the Court's concerns regarding *Janus* the SAC amply alleges facts sufficient to support a finding that VWAG acted with scienter.

For the reasons discussed in Plaintiffs' opening Motion and herein, Plaintiffs respectfully request that the Court grant their Motion.

**ARGUMENT**

"Leave to amend . . . should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Bennett v. Berryhill*, 2018 WL 10016165, at *1 (E.D. Va. Oct. 19, 2018) "Unless a proposed amendment may clearly be seen to be futile . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980). Because the SAC addresses the specific concerns in the Court's Opinion it is not futile. To the contrary, the new allegations are sufficient to withstand a motion to dismiss.

### A.  The SAC Adequately Alleges VWAG "Made" A False Statement under Janus

The proposed SAC alleges that on March 29, 2021 VWAG published on its global media website called "Volkswagen Newsroom," the "draft" false and misleading press release that was also published on VWGoA's website. ¶¶ 6, 113.[1] Like the press release on VWGoA's website, VWAG took down the press release from its global news site shortly after publishing it. *Id.* VWAG's publication of the press release on VWAG's own website, the contents of which VWAG controls and checks for accuracy, establishes that VWAG made the false statement for purposes of *Janus. Id*. As the Supreme Court held in *Janus*, "one 'makes' a statement by stating it." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 131 S. Ct. 2296, 2302 (2011). Here, VWAG stated on its website in the press release that its U.S. subsidiary would change its name from Volkswagen to Voltswagen. The fact that VWGoA also published the press release on its own website is irrelevant to VWAG's ultimate authority to make the statement for purposes of *Janus* because nothing in *Janus* precludes a single statement from having multiple makers.  *See, e.g.,  In re Pfizer Inc. Sec. Litig.,* 936 F.Supp.2d 252, 268–69 (S.D.N.Y.2013); *City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 374 (S.D.N.Y. 2012); *City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 417 (S.D.N.Y. 2011).

The additional facts demonstrating that VWAG had ultimate authority over the statements are: 1) VWAG's control over VWGoA as its corporate parent (¶¶28, 83, 200-209)); 2) VWAG CEO Herbert Diess's personal involvement in the EV campaign on behalf of the entire company, as well as his presentation at "Power Day" which preceded the Voltswagen hoax by less than two weeks and concerned the Company's debut of the ID.4 (publicity for which was the impetus behind the

---

[1] All references to ¶¶ are to the Proposed SAC.

Voltswagen hoax) (¶¶90-92, 97-98, 101-02, 105-07, 166, 173); 3) VWAG's taking responsibility for making the false statements and apologies to the press (¶¶14-18, 132); and 4) the media's attributing the false statements to VWAG (¶¶161-62; 165). The totality of these allegations coupled with the fact that VWAG made the false statement by publishing the false press release on its website demonstrates that VWAG ultimately controlled the statements and that they are attributable to VWAG under *Janus. See, e.g., In re Pfizer Inc. Sec. Litig.*, 2012 WL 983548, at *4 (S.D.N.Y. Mar. 22, 2012), *quoting Energy Solutions*, 814 F. Supp. 2d 395 (S.D.N.Y. Sept 30, 2011, quoting *Janus,* 131 S.Ct. at 2302 ("'*Janus* recognized that attribution [can] be 'implicit from surrounding circumstances.' Given the allegations that the Individual Defendants 'approved or ratified' any statements issued by Pfizer, the PAC adequately pleads that such statements were attributed to and ultimately controlled by the Individual Defendants.").

Contesting the factual allegations in the Proposed SAC, Defendants first assert that the allegation that VWAG published the press release on the VWAG newsroom website is not plausible because the link to the press release says "page not found." (Opp. at 7). But that is simply because VWAG took the press release down from its website, consistent with the allegations in the Complaint (¶¶5, 156). To be sure, one would reach the same "page not found" message in attempting to access the press release on VWGoA's website, because, as Defendants admit, VWGoA took the press release down from its website. In any event, the Court accepts a complaint's allegations as true at the motion to dismiss stage. *Dao v. Faustin*, 402 F. Supp. 3d 308, 315 (E.D. Va. 2019). Defendants will have the opportunity, *in discovery* to contest the Complaint's factual allegations and provide proof that the press release was not in fact on the VWAG website.

Second, Defendants try to escape the fact that VWAG published the press release and accuse Plaintiffs of confusing the U.S. media website and the VWAG Newsroom website. (Opp. at 8).

3

But it is Defendants who misleadingly attempt to confuse the two.  The Proposed SAC specifically alleges that VWAG published the press release on the Volkswagen Group (i.e. VWAG) Newsroom website.  ¶¶6, 115, 156.  To be sure, when one clicks on the link the Proposed SAC cites (fn. 1), which contained the press release before VWAG took it down, and navigates through the website, it is clear the website is the VWAG's newsroom website. Indeed, in clicking "terms of service," the website displays the statement that "all information on the websites of **Volkswagen AG** has been carefully checked." Finally, Defendants admit that the link to the website the SAC cites (https:///www.volkswagen-newsroom.com/en) as having published the press release is a website VWAG maintains.  (Opp. fn. 2).[2]

Third, Defendants assert that VWAG's publishing the press release is insufficient to show attribution under *Janus.* In so doing, Defendants ignore this Court's Opinion, the Proposed SAC's allegations of VWAG's control over VWGoA, and the court's decision in the Dieselgate case.

In the Opinion, the Court noted that "one district court previously determined that Volkswagen AG exercises 'ultimate authority over VW," and contrasted that case because, in addition to the control person allegations present in the Amended Complaint, in the Dieselgate case VWAG "also developed, reviewed and approved the marketing and advertising campaigns designed to sell the illegal cars." Opinion at 33. *quoting In re Volkswagen Prods. Liability Litig.*, 2017 WL 66281 at *18 (N.D. Cal. Jan. 4, 2017).  The Court held that VWAG's "daily monitoring function" over VWGoA "does not allow this Court to infer that Volkswagen AG 'collaborated with the authors to such an extent that they controlled the [press release's] publication.  *Id. quoting Noto v. 22nd*

---

[2] *Thorpe v. Walter Inv. Mgmt.*, *Corp.* 111, F.Supp.3d 1336, 1356 (S.D. Fla. 2015) (Opp. at 8) is not to the contrary. There, a company and individual defendants specifically stated in its SEC filings that they did not vouch for the accuracy of the allegedly false financial statements and even noted that it did not perform due diligence on the financial statements.

*Century Grp., Inc.*, 35 F.4th 95, 104 (2d Cir. 2022).  Here, the additions in the Proposed SAC bridge the gap in terms of what the Court found lacking in this case compared to the Dieselgate case.[3] And, while the fact the allegations concerning VWAG's control over VWGoA generally do not alone satisfy *Janus* they are relevant to the *Janus* inquiry, as they were in the Dieselgate class action against VWAG and VWGoA. Whether a person or entity is the maker of a statement is related the person's control over the statements based on surrounding circumstances.[4] Accordingly, here the allegations that VWAG controlled VWGoA overall are relevant to the *Janus* inquiry, as they were in the Dieselgate class action against VWAG and VWGoA:

> [I]n accordance with the Supreme Court's decision in *Janus Capital Group, Inc. v. First Derivative Traders*, the Complaint sufficiently alleges that VW AG had "ultimate authority" over VWGoA, VWoA, and AoA's statements, because VW AG "directed their public statements" by virtue of its position as their ultimate parent, involvement in their day-to-day operations, and ability to appoint their boards of directors and executive officers. The Complaint further alleges VW AG's ultimate authority over VWGoA, VWoA, and AoA's statements given that it developed, reviewed, and approved the marketing and advertising campaigns to sell the illegal diesel cars.  These allegations of authority, control, and entanglement more than satisfy *Janus*. ***Accordingly, and given the unity in which the entities operated, VW AG is responsible for its US subsidiaries' statements, along with the subsidiaries themselves.***

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, 2016 WL 6110575 (N.D. Cal. 2016) (internal citations and quotations omitted, cleaned up).

---

[3] The allegations here are distinguishable from the allegations which the court found insufficient in *Noto v. 22nd Century Group*, 35 F.4th 95, 104 (2d Cir. 2022) (Opp. at 9). In *Noto* the court found "the complaint made no sufficient factual allegation that the articles were published by anyone except the authors." *Noto* also did not involve a parent and its wholly owned subsidiaries whose operations it has full control over.

[4] *See, e.g., Carpenters Pension Tr. Fund of St. Louis, St. Clair Shores Police & Fire Ret. Sys. v. Barclays PLC*, 56 F. Supp. 3d 549, 558 (S.D.N.Y. 2014) (refusing under *Janus* to dismiss claims against parent company and CEO based on statements attributed to subsidiary);  (holding that *Janus* does not absolve parent of liability for statements made by subsidiary given parent's authority over subsidiary).

Here, VWAG and VWGoA operated with the same "unity," as in the Dieselgate case. VWAG and its CEO Herbert Diess were at the helm of the EV campaign and efforts to overtake Tesla as the number one EV manufacturer. As the Court stated in footnote 14 of the Opinion, VWAG and VWGoA were, in fact, "like two riders on a tandem bicycle" having a "shared identity" in connection with the EV campaign, much like they were in connection with the Dieselgate scandal.

Fourth, Defendants attempt to make short shrift of the statements in which VWAG took responsibility for the Voltswagen hoax and the media's understanding of the hoax as having come from VWAG. Defendants' assertion that VWAG's after the fact statements are truthful is a red herring. (Opp. at 9-10). Whether the statements are truthful or not is irrelevant, what is relevant is that they demonstrate that VWAG had ultimate authority for the statements. As the Court noted in the Opinion, if a speaker takes credit or blame they can be held liable as the statement's maker under *Janus.* (Opinion at 33). And as the Court also noted, VWAG's Deputy Head of Corporate Communication stated that the purpose of the campaign was "to draw attention to Volkswagen's e-offensive…The large amount of positive feedback on social media shows *we* achieved this goal. At the same time, *we* regret if in the eyes of some *we* overshot the mark of the campaign." Opinion at 38; Dkt. 9-1, at 2-3. Use of the pronoun "we" demonstrates that VWAG admitted that it had ultimate authority over the "campaign." The Proposed SAC additionally alleges that a VWAG official stated that the voltage was part of "a hoax meant to draw attention to VW's electrification strategy" that "came from the marketing department." ¶113. "Marketing department" refers to VWAG's marketing department, again demonstrating VWAG's ultimate authority over the false

6

statements.[5]  The fact that the media and the public attributed the hoax to VWAG is part of the "surrounding circumstances" that support an inference of attribution.

## B.  The SAC Adequately Alleges VWAG's Scienter

The Court's decision as to VWAG's scienter rested on its opinion that the Complaint had not sufficiently alleged that VWAG exercised ultimate authority over the false statements under *Janus*. Defendants ignore this, quoting the Opinion out of context (Opp. at 2) and launch into an argument opposing the use of corporate scienter, citing authority from the Second, Ninth and Seventh Circuit but failing to cite any authority from this Court or the Fourth Circuit because it is not favorable to them.

In the Opinion, the Court found the AC sufficiently alleged scienter as to VWGoA and the Individual Defendants. In assessing scienter as to VWAG the Court implied that scienter would have been properly pled as to VWAG if the Complaint had adequately pled that VWAG made a statement under *Janus:*

> But ***given this Court's earlier determination that Plaintiffs have not sufficiently pleaded Volkswagen AG exercised 'ultimate authority' over VWGoA, this Court is unable to attribute the severe recklessness of the Individual Defendants to Volkswagen AG by way of a 'collective scienter' theory***. To be sure, a spokesman for Volkswagen AG confirmed knowledge from the beginning of the campaign that its purpose was to propagate a flurry of social media attention in what he called an 'e-offensive.' ***Further, the name change announcement was 'so important and so dramatically false that at least one corporate official from [Volkswagen AG] must have known of their falsity upon publication.***' *In re Volkswagen Prod. Liability Litig.*, 2017 WL 66281, at \*16. But Plaintiffs have not pleaded that Volkswagen AG had final approval power over the alleged false statements. In this

---

[5] Defendants assert that the AP's statement that it was "repeatedly assured by Volkswagen that ***its U.S. subsidiary*** planned a name change" confirms that it was the U.S. subsidiary not VWAG announced the name change. (Opp. fn. 4) Not so. What this "confirms" is that VWAG assured the AP that VWGoA would have a name change. If it was VWGoA the AP was referring to as the speaker who confirmed the name change use of the possessive adjective "its" would not make sense. Presumably, journalists at the AP are sufficiently competent writers to employ accurate parts of speech.

case, the allegations allow this Court to draw a strong inference of scienter on the part of VWGoA but fall short as to the parent issuer.

Opinion at 44.

The facts set forth in the Proposed SAC plainly establish that the scienter of VWGoA and the Individual Defendants may be imputed to VWAG. While the relationship of a parent subsidiary on its own is not sufficient to impute the subsidiary's scienter to the parent in this case it is. For example, in *In re Marsh & McLennan Companies, Inc. Sec. Litig*, 501 F.Supp.2d 452, 483 (S.D.N.Y. 2006) the court attributed the scienter of Marsh & McLennan to its corporate parent MMC, where the complaint alleged facts indicating MMC's "familiarity with the subsidiary's operations and ultimately its misconduct." Here, there is no question that VWAG was "familiar with" VWGoA's operations. There is also no question that it was aware of the misconduct: VWAG publicly apologized for the deceptive conduct and acknowledged that it was a marketing campaign intended to gain publicity for VW's EVs. In addition, the scienter of the Individual Defendants can be imputed to VWAG. "The scienter of an officer of a subsidiary may be imputed to the subsidiary's parent corporation if the plaintiff adequately alleges that the parent company "possessed some degree of control over, or awareness about, the fraud." *Howard v. Arconic Inc.*, 2021 WL 2561895, at *21 (W.D. Pa. June 23, 2021), *motion to certify appeal denied*, No. 2:17-CV-01057, 2022 WL 3021549 (W.D. Pa. July 29, 2022), quoting *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 317. (S.D.N.Y. 2011). The SAC adequately pleads VWAG's control over and awareness of the fraud. Indeed, as the Opinion recognizes, VWAG acknowledged its awareness of the hoax. Opinion at p. 38 ("Volkswagen AG spokesman, Christoph Ludewig, further confirmed, on March 31, 2022, that 'from the start,' Volkswagen sought to generate attention to the Company's 'e-offensive' and 'generate attention for an important corporate and industry topic in the USA.'").

VWGoA and the Individual Defendants' scienter can be imputed to VWAG for the additional reason that they acted for the benefit of VWAG. *See, e.g., In re JPMorgan Chase & Co. Sec. Litig.*, 2007 WL 4531794, at *9 (N.D. Ill. Dec. 18, 2007)(*"*In determining whether to impute an executive's scienter to the company, this Court looks to whether an executive's fraud operates to benefit the company or whether the fraud is committed against the company.") Indeed, the marketing campaign was intended to gain free publicity for VWAG, not simply VWGoA alone. This is especially so given that VWAG CEO Herbert Diess spearheaded the EV campaign and was intent on beating Elon Musk in the race for EV dominance.

In addition, as in the Dieselgate case, "…Plaintiffs' allegations plausibly infer such a circumstance [where collective scienter is appropriate]" because its EV's, similar to VWAG's "'clean diesel' vehicles" are "an integral part of Volkswagen's [s]trategy" to become the dominant player in the EV market globally such that "it is reasonable to infer that at least some corporate officials knew" of the hoax. *In re Volkswagen 'Clean Diesel' Mktg. Marketing, Sales Practices, and Products Liability Litig.*, 2016 WL 6110575 at *14 (N.D. Cal. 2016).

## CONCLUSION

Plaintiffs' respectfully request that Court grant the Motion and that the Proposed SAC be deemed filed as of the date of the Court's entry of an order granting the Motion.

Dated: April 18, 2023

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/ Sara Fuks*
Sara Fuks (*pro hac vice*)

9

275 Madison Avenue, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
sfuks@rosenlegal.com

*Lead Counsel for Plaintiffs*

**THE LAW FIRM OF CARLTON F. BENNETT, PLLC**

*/s/ Carlton F. Bennett*
Carlton F. Bennett (VSB# 18453)
120 South Lynnhaven Rd. Ste.100
Virginia Beach, VA
Tel: (757) 486-5454
cbennett@carltonbennettlaw.com

*Local Counsel for Plaintiffs*

10

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2023, I cause the foregoing to be filed electronically with

the Clerk of the Court via CM/ECF, which will send a notice of electronic filing to all registered

users.

/s/ Carlton F. Bennett
Carlton F. Bennett (VSB# 18453)
**THE LAW FIRM OF CARLTON F. BENNETT, PLLC**
120 South Lynnhaven Rd. Ste.100
Virginia Beach, VA
Tel: (757) 486-5454
cbennett@carltonbennettlaw.com

*Local Counsel for Plaintiffs*

11

1