**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| *In re Volkswagen AG Securities Litigation* | **Case No. 1:22-cv-00045-RDA-TCB** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 14, 2023 ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

PROCEDURAL HISTORY........................................................................................................ 5

SUMMARY OF ARGUMENT .............................................................................................. 6

RELEVANT LEGAL STANDARDS ...................................................................................... 8

ARGUMENT ........................................................................................................................ 12

CONCLUSION..................................................................................................................... 20

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
   326 F.3d 505. (4th Cir. 2003)........................................................................ 2, 4, 6

*Appalachian Power Co. v. Nissen*,
   No. 7:14-CV-000535, 2015 WL 1538809 (W.D. Va. Apr. 7, 2015) ...................................... 4, 6

*Fayetteville Invs. v. Com. Builders, Inc.*,
   936 F.2d 1462 (4th Cir. 1991).......................................................................... 6

*Hodges v. Brown*,
   No. 5:11-CT-3242-D, 2014 WL 1309292 (E.D.N.C. Mar. 31, 2014) ........................................ 7

*Hutchinson v. Staton*,
   994. F.2d 1076 (4th Cir. 1993).......................................................................... 4

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
   529 F. Supp. 3d 111 (S.D.N.Y. 2021).................................................................... 12

*In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prod. Liab. Litig.*,
   No. 8:12-CV-00087-JMC, 2013 WL 1194851 (D.S.C. Mar. 22, 2013) ..................................... 5

*In re Building Materials Corp. of America Asphalt Roofing Shingle Products Liability Litig.*,
   2013 WL 3337833 (D.Sc. July 2, 2013) ................................................................ 5

*In re Galena Biopharma, Inc. Sec. Litig.*,
   117 F. Supp. 3d 1145 (D. Or. 2015)..................................................................... 10

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
   543 F. Supp. 3d 96 (D. Md. 2021) ...................................................................... 12

*In re Optimal, U.S. Litig.*,
   2011 WL 4908745 (S.D.N.Y. Oct. 14, 2011) ............................................................ 16

*In re Turquoise Hill Resources Ltd. Sec. Litig.*,
   2022 WL 4085677 (S.D.N.Y. 2022) ...................................................................... 11

*Janus Capital Grp., Inc. v. First Derivative Traders,*
   *Inc.*, 564 U.S. 135 (2011) ................................................................... 3, 8, 9

*June v. Thomasson*,
   2017 WL 3642944 (D. Md. Aug. 24, 2017)................................................................ 6

*Matter of Vulcan Constr. Materials, LLC,*
  433 F. Supp. 3d 816 (E.D. Va. 2019)..................................................................... 4, 5

*Mem. Hosp. v. Mercury Const. Corp.,*
  460 U.S. 1 (1983) ...................................................................................................... 2

*Netscape Communs. Corp. v. Valueclick, Inc.,*
  707 F. Supp. 2d 544 (E.D. Va. 2010)......................................................................... 5

*Randolph v. Joe Holland Chevrolet, Inc.,* No. CIV.A.,
  2:00-1132, 2005 WL 2428164 (S.D.W. Va. Sept. 30, 2005).................................... 5, 6

*Roberts v. Genesis Healthcare Corp.,*
  2007 WL 9758394 (D. Md. June 26, 2007) ............................................................... 5

*S.E.C. v. Nostra Energy, Inc.,*
  202 F.Supp.3d 391 (S.D.N.Y. 2016)........................................................................... 3

*S.E.C. v. Texas Gulf Sulphur Co.,*
  401 F.2d 833 (2d Cir. 1968)................................................................................. 3, 11

*S.E.C. v. Woolf,*
  835 F.Supp.2d 111 (E.D. Va. 2011).......................................................................... 10

*Semerenko v. Cendant Corp.,*
  223 F.3d 165 (3d Cir. 2000).................................................................................... 11

*U.S. S.E.C. v. Pirate Investors LLC,*
  580 F.3d 233 (4th Cir. 2009)........................................................................... 3, 10, 11

*White v. New Hampshire Dep't. of Employment Sec.,*
  455 U.S.  (1982) ........................................................................................................ 5

*Wilson v. B&B Properties,*
  2021 WL 4583644 (D. Sc. Oct 5, 2021) ................................................................... 7

## Statutes

15 U.S.C. § 78t.................................................................................................... 4, 16

## Rules

Fed. R. Civ. P. 59............................................................................................... 4, 5, 6

Fed. R. Civ. P. 54.................................................................................................. passim

**<u>Other Authorities</u>**

Lipton, Ann. *There's no joking in securities law*, Business Law Prof Blog, March 18, 2023 ..... 13

Pursuant to this Court's February 14, 2024 Memorandum Opinion and Order (Dkt. 69) and Federal Rules of Civil Procedure 54(b) and 59(e) Lead Plaintiff Laszlo Rozsavolgyi and named Plaintiff Thomas Wells ("Plaintiffs") respectfully submit this renewed motion for reconsideration of this Court's March 14, 2023 Memorandum Opinion and Order ("Opinion") granting Defendants' Motion to Dismiss the Amended Complaint ("Complaint") (Dkt. 48).

## PROCEDURAL HISTORY

On March 14, 2023 this Court granted Defendants' Motion to Dismiss the Complaint without prejudice. In granting Defendants' Motion, this Court found that (1) Plaintiffs failed to state a plausible claim against all Defendants under Section 10(b), because they did not sufficiently plead a plausible connection between the alleged false statements of VWGoA and the Individual Defendants and the securities at issue, and (2) Plaintiffs failed to state a plausible claim against Defendants for control person liability under 20(a) because Plaintiffs did not establish a primary violation. (Opinion at 52-60). In the Opinion, the Court ordered that if Plaintiffs seek to further amend the Complaint Plaintiffs must file a Motion to Amend with a proposed Second Amended Complaint attached, within fourteen days of the Opinion (i.e. by March 28, 2023). On March 23, 2023, Plaintiffs filed a motion seeking reconsideration of the Opinion dismissing the Complaint. (Dkt. 49). On March 28, 2023, Plaintiffs filed a Motion to Amend and attached to it a Proposed Second Amended Complaint (Dkt. 53). On April 6, 2023 Defendants filed a Response in Opposition to Plaintiffs' Motion for Reconsideration (Dkt. 57). On April 11, 2023 Defendants filed a Response in Opposition to Plaintiffs' Motion to Amend (Dkt. 58). On April 13, 2023 Plaintiffs filed their Reply in further support of their Motion for Reconsideration, which Defendants moved to strike, or alternatively, for leave to file a surreply (Dkt. 60). Plaintiffs filed their Opposition to Defendants' Motion to Strike on April 19, 2023 (Dkt. 66), and Defendants filed their reply in

support thereof on April 25, 2023. (Dkt. 68). Plaintiffs filed their Reply in further support of their Motion to Amend on April 18, 2024 (Dkt. No. 65).

On February 14, 2024, this Court denied Plaintiffs' Motion for Reconsideration without prejudice to renewal, and directed Plaintiffs to file a renewed motion for reconsideration that includes all the grounds for which they seek relief on or before March 29, 2024 (Dkt. 69 at 4). The Court further ordered that Defendants' Motion to Strike is denied as moot. (*Id.*). The Court has not yet ruled on Plaintiffs' Motion to Amend.

## SUMMARY OF ARGUMENT

Before a final order is entered "a district court retains the power to reconsider and modify its interlocutory judgments…at any time prior to formal judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.,* 326 F.3d 505, 514-15. (4th Cir. 2003). "Every order short of a final decree is subject to the reopening at the discretion of the district judge." *Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983). Whether assessed under Rule 54(b) or 59(e), there is no question that this Court has the authority to reconsider the Opinion.

Plaintiffs are appreciative of this Court's detailed and careful analysis in the Opinion, which finds that the Complaint adequately alleges: (1) that the Individual Defendants and VWGoA issued materially false statements under §10(b) and Rule 10b-5 (Opinion at 25-32); (2) that VWGoA and the Individual Defendants acted with scienter (Opinion at 37-44); (3) that the alleged misstatements were made in connection with the purchase or sale of a security in the United States (Opinion at 44-52); (4) economic loss and loss causation (Opinion at 53-59); and (5) that §10(b) and Rule 10b-5 may be applied to Plaintiffs' domestic transactions in VW's unsponsored ADRs. (Opinion 15-24).

6

However, Plaintiffs respectfully submit that the Court's conclusion that it must find the issuer (Volkswagen AG) primarily liable under §10(b) in order to hold VWGoA and the Individual Defendants liable under §10(b) was in error (Opinion at 52). Under controlling Fourth Circuit precedent, the requirement that the purchase or sale of securities occur "in connection with" the alleged false statements does **not** require a securities trading relationship between the plaintiff purchasers and the individuals/entities responsible for making the false statements.  *U.S. S.E.C. v. Pirate Investors LLC*, 580 F.3d 233, 244-52 (4th Cir. 2009).  Instead, Courts throughout the country have held that "A statement can be made 'in connection with' the purchase or sale of a security even if the violator does not actually own the securities or engage in relevant securities transactions. Rather, "Rule 10b-5 is violated whenever assertions are made…in a manner reasonably calculated to influence the investing public…Courts have concluded that when misleading promotional materials are designed to ramp up stock sales, the misleading statements are made 'in connection with' the sale of securities they tout." *S.E.C. v. Nostra Energy, Inc.*, 202 F.Supp.3d 391, 397 (S.D.N.Y. 2016) *quoting S.E.C. v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 860 (2d Cir. 1968).

In other words, even if the Court dismisses the §10(b) claim for primary liabilty as to Volkswagen AG it should deny the motion to dismiss as to VWGoA and the Individual Defendants because the Court has determined that Plaintiffs adequately alleged that VWGoA and the Individual Defendants made materially false statements that investors relied upon in purchasing Volkswagen ADSs. There is no requirement in the Supreme Court's decision in *Janus Capital Grp., Inc. v. First Derivative Traders, Inc.*, 564 U.S. 135 (2011), or elsewhere, that the person making the false statements and who is alleged to have primary liability under Section §10(b) be the issuer of the securities, an employee of the issuer, or transact in the subject securities. There is

7

likewise also no requirement that the issuer of the securities be held liable under §10(b) in order to hold its subsidiaries and agents/employees liable under §10(b). Accordingly, and as discussed further below, this Court should reconsider its Opinion and hold that Plaintiffs have adequately alleged a §10(b) violation as to VWGoA and the Individual Defendants. Relatedly, because the Opinion holds that the Complaint sufficiently alleges that Volkswagen AG controls VWGoA (Opinion at 47-48), the Court should deny Volkswagen's AG's motion to dismiss the §20(a) claim, which creates joint and several liability for "person[s] who directly, or indirectly, control [ ] and person liable" for securities fraud. 15 U.S.C. § 78t.

## RELEVANT LEGAL STANDARDS

Federal Civil of Civil Procedure 54(b) provides that an: "order or other decision, however designated, that adjudicates ***fewer than all*** the claims ***or the rights and liabilities*** of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims ***and all the parties' rights and liabilities***. Fed. R. Civ. P. 54(b) (emphasis added). "The United States Court of Appeals for the Fourth Circuit has explained that reconsideration of an interlocutory order may be appropriate when '(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was ***clearly erroneous and would work manifest injustice***.'" *Appalachian Power Co. v. Nissen*, No. 7:14-CV-000535, 2015 WL 1538809, at *1 (W.D. Va. Apr. 7, 2015), quoting *American Canoe Ass'n*, 326 F.3d at 515(emphasis added). Similarly, Federal Rule of Civil Procedure 59(e) permits a district court to grant a motion for reconsideration "(1) to accommodate an intervening change in controlling law; (2) account for new evidence not at trial; or (3) to correct a clear error of law to prevent manifest injustice." *Matter of Vulcan Constr. Materials, LLC*, 433 F. Supp. 3d 816, 819-20 (E.D. Va. 2019),

*quoting Hutchinson v. Staton*, 994. F.2d 1076, 1081 (4th Cir. 1993). Rule 59(e) "was adopted to 'make clear that the district court possesses the power' to rectify its own mistakes in the period immediately following the entry of the judgment.'" *Roberts v. Genesis Healthcare Corp.* 2007 WL 9758394 at \*2 (D. Md. June 26, 2007) *quoting White v. New Hampshire Dep't. of Employment Sec.*, 455 U.S. 455, 450 (1982).

However, reconsideration under Rule 59 applies to final judgments, whereas Rule 54 applies to order that do not end the action. And, whereas reconsideration under Rule 59(e) is generally limited to "extraordinary circumstances," reconsideration under Rule 54(b) has, as its "goal [ ] simply to 'reach the correct judgment under the law.'" *Matter of Vulcan Construction Materials, LLC*, 433 F. Supp. 3d at 820, *quoting Netscape Communs. Corp. v. Valueclick, Inc.*, 707 F. Supp. 2d 544, 547 (E.D. Va. 2010). Nevertheless, in deciding a motion for reconsideration under Rule 54(b) "the Court is 'guided by the [general principles' of Rule 59(e). *Id.* Indeed, both Rules 54 and 59 provide for reconsideration where a prior decision was clearly erroneous, and failure to reconsider would result in manifest injustice.

Some courts have considered motions for reconsideration under Rule 59 despite having dismissed *without* prejudice. For example, in *In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prod. Liab. Litig.*, No. 8:12-CV-00087-JMC, 2013 WL 1194851, at \*6 (D.S.C. Mar. 22, 2013) the court issued an order dismissing plaintiffs' complaint without prejudice. In a subsequent order, the court assessed plaintiffs' motion for reconsideration of that dismissal under Rule 59. *In re Building Materials Corp. of America Asphalt Roofing Shingle Products Liability Litig.*, 2013 WL 3337833 at \*2 (D.Sc. July 2, 2013) (considering motion to reconsider under Rule 59). Courts also frequently consider motions for reconsideration filed under Rule 59(e) where "final judgment has not been entered" as ones "seeking reconsideration pursuant to Rule 54(b)." *Randolph v. Joe*

9

*Holland Chevrolet, Inc.*, No. CIV.A. 2:00-1132, 2005 WL 2428164, at \*1 (S.D.W. Va. Sept. 30, 2005). *See also, June v. Thomasson*, 2017 WL 3642944 at \*3 (D. Md. Aug. 24, 2017)(applying Rule 54(b) to motion brought under Rule 59(e)).

Here, because the Court's Opinion is not a final judgment, and adjudicates fewer than all of Plaintiffs' rights, having permitted them to file a Motion to Amend, Rule 54(b) appropriately governs this Court's analysis of reconsideration.

First, as a technical matter, Rule 54(b) permits reconsideration here because it applies to orders that do not end the action. Rule 54(b) not only refers to any order "however designated" that adjudicates "fewer than all of the claims," but also, disjunctively (i.e. "or") "fewer than the ***rights and liabilities*** of fewer than all of the parties." Rule 54. The Court's Opinion adjudicated fewer than all of Plaintiffs' rights because it permitted Plaintiffs to file a motion to amend. Because the Court's Opinion did not end the action, reconsideration under Rule 54 is appropriate.

Second, both Rule 54 and the Court's inherent power plainly permits it to reconsider interlocutory orders. *See, e.g. American Canoe Ass'n*, 326 F.3d at 514-15. Before a final order is entered "a district court retains the power to reconsider and modify its interlocutory judgments…at any time prior to final judgment when such is warranted." *See also, Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991) ("An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment").

Further, the factors governing reconsideration under Rule 54 "do not and cannot limit the power of a court to reconsider an earlier ruling .... ***[as the] ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law***." *American Canoe Ass'n*, 326 F.3d at 515. Indeed, "the decision to revise an earlier order is committed to the discretion of the district court." *Appalachian Power Co. v. Nissen*, No. 7:14-CV-000535, 2015 WL 1538809, at \*1

10

(W.D. Va. Apr. 7, 2015); *Randolph*, 2005 WL 2428164, at *2 (rejecting assertion that legal doctrines such as law of the case limits ability to court to reconsider earlier ruling because it "does not and cannot limit the power of a court to reconsider an earlier ruling. ***The ultimate responsibility of federal courts, at all levels, is to reach the correct judgment under the law.***") *See also Hodges v. Brown*, No. 5:11-CT-3242-D, 2014 WL 1309292, at *2 (E.D.N.C. Mar. 31, 2014) ("Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment," but are "committed to the discretion of the district court").

Third, There is nothing improper about simultaneously filing a motion for reconsideration and a motion to amend. *See, e.g., Wilson v. B&B Properties* 2021 WL 4583644 (D. Sc. Oct 5, 2021) (considering motion for reconsideration and to amend the complaint simultaneously). The circumstances here required Plaintiffs to file both, to preserve their rights. Plaintiffs' Motion to Amend and Proposed Second Amended Complaint pertain to VWAG's primary liability under 10(b). If the Court denied Plaintiffs' Motion to Amend, Plaintiffs would be unable to seek reconsideration of the March 14, 2023 Opinion because the deadline to file such motion would have long passed. Any assertion that the Court somehow lacks the inherent authority to reconsider its own opinion simply defies common sense and the principles of efficiency.

***

With the above legal standards in mind, Plaintiffs respectfully request that the Court reconsider its Opinion because there was a clear error of law in the Court's conclusion that "without a plausible theory of liability ascribed to the issuer, Plaintiffs' purchase or sale of Volkswagen ADRs cannot be said to "touch[]" or "coincide" with the alleged false statements of the Individual Defendants and VWGoA."  (Opinion at 52).

11

!

## ARGUMENT

Plaintiffs appreciate this Court's thorough consideration of the parties' briefing and statements at oral argument in this securities class action which is more complex than most given the number or issues raised in Defendants' motion to dismiss. Plaintiffs' motion to reconsider is extremely narrow.  It relates only to the Court's holding that "[w]ithout a plausible theory of liability as to the issuer, Plaintiffs' purchase or sale of Volkswagen ADRs cannot be said to 'touch[]" or "coincide" with the alleged false statements of the Individual Defendants and VWGoA" (Opinion at 52), and corresponding dismissal of Plaintiffs' §10(b) claims as to VWGoA and the Individual Defendants.

On page 51 of the Opinion the Court holds that "Plaintiffs' allegations provide a plausible basis that the alleged misstatement 'touches' or 'coincides' with 'the purchase or sale of any other security in the United States,'" (Opinion at 51).  The Opinion states that "This Court also reaffirms the principle that 'publicly-disseminated press releases, research reports, and website communications that contain materially false and misleading statements regarding an issuer of securities satisfies the 'in connection with' requirement….As  the Fourth Circuit requires, Plaintiffs have adequately averred that VWGoA publicly disseminated a press release on multiple occasions and that such announcement was material…Given the alleged seriousness with which the market perceived the name change, it is entirely reasonable that investors would have relied upon the press release." (Opinion at 52).

In the next paragraph of the Opinion the Court goes on to cite the Supreme Court's decision in *Janus Capital Group, Inc.*, 564 U.S. 135:

> The problem remains, however, that Plaintiffs have not adequately demonstrated that Volkswagen AG may be held liable under 10(b) because the Amended

Complaint does not state with the level of particularity demanded by the PSLRA that Volkswagen confirmed publication of the press release. This Court will not contravene *Janus* by holding that the statements of a non-publicly traded wholly-owned subsidiary and its employees ***may be actionable <u>upon the parent issuer</u>*** when the Amended Complaint fails to adequately plead that the alleged material misstatements may be attributed to the parent issuer.
(Opinion at 52).

Plaintiffs here do not take issue with the Court's conclusion above, that the Complaint does not sufficiently allege that the material misstatements are attributable to Volkswagen AG, and that the statements are therefore not actionable upon Volkswagen AG. This motion does not contest the Court's dismissal of the §10(b) claims as to Volkswagen AG.

However, Plaintiffs respectfully submit that the next sentence in the Court's Opinion is error and is unrelated to *Janus* and unsupported by any other legal authority. While acknowledging that "it was reasonable for investors to rely upon [the] alleged false statements" the Opinion holds:

***Without a plausible theory ascribed to the issuer, Plaintiffs' purchase or sale of Volkswagen ADRs cannot be said to 'touch[ ]' or 'coincide' with the alleged false statements of the Individual Defendants and VWGoA***. (Opinion at 52).

The Supreme Court in *Janus* nowhere held that liability must attach to the issuer of a security under §10(b) in order to find that the false statements other actors made "touch" or "coincide" with the purchase of a security. In *Janus,* the Supreme Court held that the maker of a statement is the entity with authority over its content and when and how to communicate it. 564 U.S. 135, 144. The *Janus* Court held that because the statements in the Janus Investment Fund prospectuses were made by Janus Investment Fund, not Janus Capital Management (JCM) (a mutual fund investment adviser), the plaintiff had not stated a claim against JCM under Rule 10b-5. *Id.* at 148. The *Janus* Court did not hold that Janus Investment Fund could not be held liable for

misstatements it made under Rule 10b-5, nor did it address whether any alleged false statements "touched" or "coincided" with the purchase or a security.

*Janus* does not foreclose liability against individuals who issue false statements about a given security simply because the issuer of the security itself did not also make a false statement (or because those false statements are not "attributable to the issuer"). That courts have found various categories of non-issuers (*e.g.,* brokers, promoters, traders, analysts) liable under §10(b) for false statements they themselves made in connection with a plaintiff's purchase of securities illustrates this point.[1]

The Court's holding that because Plaintiffs have not alleged a §10(b) violation as to Volkswagen AG, Plaintiffs' securities transactions do not "touch" or "coincide" with VWGoA's and the Individual Defendants' false statement directly contravenes the Fourth Circuit's holding in *Pirate Investors*, 580 F.3d at 247, 251. In that case, Pirate Investor offered and sold an e-mail stock tip which contained materially false information about a company providing uranium enrichment services. 580 F.3d at 237. The district court found Pirate Investor liable for violating §10(b) and Rule 10b-5 by offering and selling the false stock tip. *Id.* On appeal, Pirate Investor argued that the fraud in the case did not make the necessary connection to securities transactions because Pirate Investors did not trade in the company's stock (and had no trading relationship with the plaintiffs). *Id* at 247-48. The Court of Appeals, affirming the district court's finding of liability, held that the misstatements Pirate Investor made were in connection with the purchase or sale of

---

[1] *See, e.g. In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1191 (D. Or. 2015) (§10(b) claim adequately alleged against stock promoter, misrepresentations "touch upon" securities transaction because investors relied on them and they were material); *S.E.C. v. Woolf*, 835 F.Supp.2d 111, 120-121 (E.D. Va. 2011) (§10(b) claim adequately alleged against promotional speakers who ran investment seminars; alleged false statements were made "in connection with" plaintiff's securities even though statements did not pertain to particular securities).

securities under §10(b) irrespective of the parties having no trading relationship. *Id.* at 252. The

Fourth Circuit explained the derivation of the "in connection with" or "coincide" requirement,

which was first articulated by the Second Circuit in *Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir.

1968):

> Under the *Texas Gulf* standard, the SEC must establish two distinct elements: (1)
> the misrepresentations in question were disseminated to the public in a medium
> upon which a reasonable investor would rely and (2) they were material when
> disseminated. *Semerenko,* 223 F.3d at 176. We have already considered whether
> the misrepresentations in this case were material. Here, we focus our attention on
> the first element of *Texas Gulf.* The SEC must show that reasonable investors
> would base their investment decisions on the *types* of communications at issue in
> this case—mass e-mails from a purveyor of internet investment advice.

! The Fourth Circuit further explained that the rationale of *Texas Gulf,* and the "in connection

with requirement" was to ensure that unknowing speakers were protected from potential liability

under §10(b) by requiring that their communications be in a medium upon which an investor would

rely:

> At its core, the *Texas Gulf* standard is about notice—attaching liability under the
> securities laws for statements made in any medium, no matter how tangentially
> related to the securities markets, would run the risk of roping in speakers who had
> no idea that their conduct might implicate Section 10(b). Thus, by requiring that
> misstatements be communicated in a medium upon which a *reasonable* investor
> would rely, the *Texas Gulf* standard protects these unknowing speakers from
> liability and ensures that there is a sufficient nexus between the misrepresentations
> and the securities sales that they induce to satisfy the Supreme Court's command
> that the fraud and securities sales "coincide."

*Id.* at 250-251.

Indeed, a plethora of cases support that persons other than the issuer of the subject security

can be held primarily liable under Section 10(b) for false statements of material fact in connection

with the purchase or sale of securities. For example, in *In re Turquoise Hill Resources Ltd. Sec.*

*Litig.*, 2022 WL 4085677, at *26 (S.D.N.Y. 2022) the court granted the parent company/issuer's

15

motion to dismiss plaintiff's §10(b) claim but denied the motion to dismiss plaintiff's §10(b) claim as to the subsidiary who made the alleged misstatements about the issuer. Various persons and entities who act as agents of an issuer can be held liable under §10(b) for statements about the issuer. For example, auditors are responsible for their audit opinions concerning the financial statements of issuers, even though auditors do not trade in the issuer's securities and derive no benefit from transactions in the issuer's securities. *See, e.g., In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 157 (S.D.N.Y. 2021) to dismiss §10(b) claim as to outside auditor of defendant company whose stock plaintiffs purchased).

This Court correctly held that the Individual Defendants' and VWGoA's allegedly false statements were disseminated to the public in a medium upon which reasonable investors would rely and that they were material when disseminated (Opinion at 29-32). The Court additionally held that VWGoA and the Individual Defendants knew that they were making false statements (Opinion 38-39) and targeted the public, thus satisfying *Texas Gulf's* notice concerns. There is simply no basis in law or fact for concluding that the VWGoA's and the Individual Defendants' materially false statements do not "touch" or "coincide" with Plaintiffs' securities transactions.[2]

In sum, the Complaint adequately alleges that VWGoA and the Individual Defendants issued material misstatements that investors relied upon in purchasing Volkswagen ADSs.

---

[2] *See, e.g., In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 96, 139–41 (D. Md. 2021), *aff'd sub nom. In re Marriott Int'l, Inc.*, 31 F.4th 898 (4th Cir. 2022) (finding sufficient nexus between misrepresentations on Marriot website concerning privacy and purchase of securities noting that the Supreme Court embraces an "expansive" reading of the "in connection with requirement," which has been applied to "investment research reports from a reputable broker, prospectuses, sales and marketing materials at brokerage houses and other points of sale, SEC filings, and detailed drug advertisements published in  sophisticated medical journals.")

Accordingly, there is no basis to grant the Motion to Dismiss as to VWGoA and the Individual Defendants.

An article authored by a Business Law Professor shortly after the Court issued the Opinion confirms Plaintiffs' interpretation of the legal error in the Opinion. Tulane University Law School Business law professor and securities law expert Ann Lipton wrote about the Opinion on March 18, 2023.[3] First, Professor Lipton noted that the Opinion found that Plaintiffs alleged a domestic transaction.[4] Second, Professor Lipton noted that the Court employed *Janus*, in determining the "potential liability of the Volkswagen parent" and held that Plaintiffs had not shown sufficient facts to allege VWAG exercised ultimate authority of the statements issued by VWGoA.[5] Third, Professor Lipton noted that the Opinion held VWGoA and its officers "acted at least recklessly when issuing the press release, their scienter could be attributed to VWGoA and that plaintiffs had established materiality and loss causation."[6] Fourth, Professor Lipton noted that the Opinion held that given the relationship between the parent and the subsidiary, the statements by VWGoA were not so attenuated from the securities of Volkswagen as to eliminate 10(b) liability (citing Op. at 67).[7] Fifth, Professor Lipton noted that the Opinion held that Plaintiffs had plausibly alleged that the misstatements "touch or coincide" with "the purchase or sale of any other security in the United States."[8] Sixth, Professor Lipton noted that the Opinion held that the statements were distributed in a medium upon which investors rely.[9] Finally, Professor Lipton discussed the inconsistency

---

[3] Lipton, Ann. *There's no joking in securities law*, Business Law Prof Blog, March 18, 2023. Available at: https://lawprofessors.typepad.com/business_law/2023/03/theres-no-joking-in-securities-law.html.
[4] *Id.* fn. 2.
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*

between the Court's Opinion on the above and the result, asking rhetorically, "But did the claims against the VWGoA defendants survive? They did not."  Professor Lipton quotes the portion of the Court's Opinion Plaintiffs ask the Court to reconsider and after doing so states:

> I... do not follow.  The court seems to be hung up on *Volkswagen*'s liability, when the question of the liability of VWGoA and its officers is distinct**.  Why should VWGoA's liability for false public statements turn on whether Volkswagen parent is liable?  We have three actors: VWGoA, its CEO, and its head of tech, all of whom, with scienter, made false statements about Volkswagen's business – about, the court found, Volkswagen's securities – in a medium on which investors would (and did) rely.**  It's now well-established – the court even *says*[10] in its opinion, at \*65-66 – that actors *other than issuers* can be liable for issuing fraudulent statements in connection with the issuers' securities.  Analysts, auditors, brokers, all might lie about a company's securities; the company may be entirely innocent, but that does not absolve the speaker.  If I adopt some kind of pseudonymous identity and go online and make false statements about a publicly traded security, I would surely expect the SEC to come after me, even if the issuer had nothing to do with it.
>
> Nonetheless, the court seemed to hold, that logic only extends to actors who are *independent* of the issuer.  It does not extend to actors who are *related* to the issuer, such as wholly owned subsidiaries.  Those speakers, uniquely, get a free pass.
>
> In other words, VWGoA and its officers escape liability because there is both *too much* control by Volkswagen – it would contravene *Janus* to hold a controlled subsidiary liable for statements it actually made about its parent – and *too little*, because there was not *enough* control by Volkswagen to make Volkswagen the legal "maker" of the statements.
>
> **Notably, the court's holding would seem to create an open season for subsidiaries to make false statements about parent companies – <u>which is particularly bizarre because, earlier in its opinion, that's exactly what the court wanted to avoid</u>**:
>
> > For purposes of standing, Plaintiffs' fulsome allegations demonstrate the appropriateness of extending Rule 10b-5's reach to securities of a parent company, when that parent company exercises substantial involvement over the day-to-day operations of a wholly-owned subsidiary alleged to have violated federal securities laws. If this were not so, issuers exercising such concrete control over their subsidiaries would never be legally responsible for the statements of their non-publicly traded wholly-owned subsidiaries.

---

[10] Italicized emphasis is original.

> That would reward issuers with a scapegoat mechanism through their unlisted subsidiaries to avoid§ 10(b)'s remedial scheme.

> Yes!  I agree!  But still, the court says there's no liability even for the subsidiary that made the statements, with scienter.

Quoting Opinion at 48.

Professor Lipton's analysis demonstrates that the Court should reconsider its holding granting the motion to dismiss as to VWGoA and the Individual Defendants.

### *Because the Complaint Adequately Alleges VWGoA and the Individual Defendants Are liable under §10(b), the Complaint Adequately Alleges VWAG's Liability Under §20(a)*

In the Opinion, the Court held VWAG had control over VWGoA:

> [T]he issuer here is alleged to control the entity responsible for making the alleged false statements.  Dkt. 21 ¶ 186.  Volkswagen AG allegedly owns 100% of the entity that published the alleged false statement, possesses and exercises authority to appoint all of the entity's directors and executive officers, directly monitors its day-to-day operations, financial reporting, accounting and regulatory actions, and participates in the preparation and dissemination of its public statements…these allegations reveal that Volkswagen and the Company operated in a manner that is anything but remote and that is far more closely-knit than the "scheme" between Altria and JUUL. For purposes of standing, Plaintiffs' fulsome allegations demonstrate the appropriateness of extending Rule 10b-5's reach to securities of a parent company, when that parent company exercises substantial involvement over the day-to-day operations of a wholly-owned subsidiary alleged to have violated federal securities laws.

(Opinion at 47-48).

The Court also held that "when a court finds that a plaintiff has adequately pleaded a primary violation under §10(b), the §20(a) claim survives the motion to dismiss as well." Opinion at 60.  Because the Court should find VWGoA and the Individual Defendants primarily liable §10(b) and because has already held that VWAG controls VWGoA for purposes of §20(a), the Court should sustain the Complaint's §20(a) as to VWAG.

Nothing in *Janus* alters Congress's enactment of §20(a) as a means to hold liable entities that control any person who violates the securities law.  As the *Janus* Court stated, "Congress also

has established liability in §20(a) for 'every person who, directly or indirectly, controls any person labile' for violations of the securities laws." *Janus*, at 2304, quoting 15 U.S.C. § 78t(a)). *See, e.g., In re Optimal, U.S. Litig.*, 2011 WL 4908745, at *6 (S.D.N.Y. Oct. 14, 2011) ("it follows from *Janus* that Rule 10b-5 liability for a one-hundred percent shareholder of an entity 'making' a misleading statement is inappropriate; ***rather, section 20(a) is the appropriate source of liability.***"). The same is true here. Even if VWAG is not liable under §10(b), because of its control over VWGoA, §20(a) is the appropriate source for its liability.

**CONCLUSION**

The Court should grant reconsideration and deny the motion to dismiss as to VWGoA and the Individual Defendants. Because the Complaint adequately alleges a primary violation of §10(b) as to VWGoA and the Individual Defendants and because the Opinion holds that the Complaint sufficiently alleges that Volkswagen AG controls VWGoA (Opinion at 47-48), the Court should deny Volkswagen's AG's motion to dismiss the §20(a) claim.

Dated: March 25, 2024

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Sara Fuks
Sara Fuks (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
sfuks@rosenlegal.com

*Lead Counsel for Plaintiffs*

20

**THE LAW FIRM OF CARLTON F. BENNETT, PLLC**

__/s/Carlton F. Bennett_____

Carlton F. Bennett
120 South Lynnhaven Rd. Ste.100
Virginia Beach, VA
Tel: (757) 486-5454
cbennett@carltonbennettlaw.com

*Local Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25 2024, I caused the foregoing to be filed electronically with the Clerk of the Court via CM/ECF, which will send a notice of electronic filing to all registered users.

/s/_ Carlton F. Bennett_____
Carlton F. Bennett
**THE LAW FIRM OF CARLTON F. BENNETT, PLLC**
120 South Lynnhaven Rd. Ste.100
Virginia Beach, VA
Tel: (757) 486-5454
cbennett@carltonbennettlaw.com

*Local Counsel for Plaintiffs*

21