**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| *In re Volkswagen AG Securities Litigation* | **Case No. 1:22-cv-00045-RDA-TCB**<br><br>**CLASS ACTION** |

**DEFENDANTS' RESPONSE IN OPPOSITION TO**
**PLAINTIFFS' RENEWED MOTION FOR RECONSIDERATION**

MCGUIREWOODS LLP

Garrett H. Hooe (VSB No. 83983)
Gateway Plaza
800 Canal Street
Richmond, Virginia 23219
Tel: 804-775-1065
Fax: 804-698-2079
ghooe@mcguirewoods.com

SULLIVAN & CROMWELL LLP

Robert J. Giuffra, Jr. (*pro hac vice*)
Sharon L. Nelles (*pro hac vice*)
125 Broad Street
New York, NY 10004
Tel: 212-558-4000
Fax: 212-558-3558
giuffrar@sullcrom.com
nelless@sullcrom.com

Laura Kabler Oswell (*pro hac vice*)
550 Hamilton Avenue
Palo Alto, California 94301
Tel.: 650-461-5600
Fax: 650-461-5700
oswelll@sullcrom.com

Daniel J. Richardson (VSB No. 94961)
1700 New York Avenue NW
Washington, D.C. 20006
Tel: 202-956-7500
Fax: 202-293-6330
richardsond@sullcrom.com

*Counsel for Defendants Volkswagen AG, Volkswagen*
*Group of America, Inc., Scott Keogh, and Mark Gillies*

April 8, 2024

**TABLE OF CONTENTS**

*Page*

**PRELIMINARY STATEMENT** ...................................................................................................1

**PROCEDURAL HISTORY** ........................................................................................................3

**ARGUMENT** ..............................................................................................................................4

I.      **THE COURT SHOULD DENY PLAINTIFFS' RENEWED MOTION FOR
        RECONSIDERATION UNDER RULE 54(B)** ................................................................4

    A.      Plaintiffs Cannot Seek Relief Under Rule 54(b) .............................................................5

    B.      Plaintiffs Have Not Identified Any "Manifest Injustice" Created By This Court's
        Decision ...........................................................................................................................7

II.     **IF THE COURT GRANTS PLAINTIFFS' MOTION, IT SHOULD ALSO
        RECONSIDER WHETHER PLAINTIFFS PLAUSIBLY ALLEGED
        SCIENTER** .......................................................................................................................12

**CONCLUSION** ........................................................................................................................15

**PRELIMINARY STATEMENT**

Plaintiffs' theory of liability in this case is unprecedented. They allege that the wholly-owned U.S. sales subsidiary of a foreign company (and the U.S. sales subsidiary's employees) can be held liable for securities fraud based solely on transactions in *unsponsored* American Depositary Receipts (ADRs) referencing the foreign-traded stock of the parent corporation. On March 14, 2023, this Court correctly held that Plaintiffs failed to state a claim against the foreign company (Volkswagen AG ("VWAG")). ECF No. 48, at 34 (Order). Plaintiffs do not challenge this ruling. In addition, the Court correctly held that Plaintiffs had failed to plead sufficient facts to support their novel theory of liability against the U.S. sales subsidiary (Volkswagen Group of America ("VWGoA")) and two of its employees (Scott Keogh and Mark Gilles), because they did not allege a sufficient connection between the conduct of the subsidiary's employees and the foreign-traded securities on which they rest their claim. Order at 52.

Plaintiffs already asked this Court to reconsider its decision under Federal Rule of Civil Procedure 59(e), which allows a court to "correct a clear error of law." *United States ex rel. Becker* v. *Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002); *see* ECF No. 49, at 1. Recognizing that they cannot satisfy Rule 59(e)'s demanding standards, Plaintiffs have now changed course and seek extraordinary relief under Rule 54(b). *See* ECF No. 70, at 1 (Mot.). But Plaintiffs' second motion for reconsideration fares no better than their first, and the Court should deny it for two independent reasons.

*First*, Plaintiffs cannot invoke Rule 54(b) to seek reconsideration of an order dismissing their entire case. As the Fourth Circuit has repeatedly held, Rule 54(b) applies only "[w]here a district court issues an interlocutory order . . . 'that adjudicates fewer than all of the [plaintiffs'] claims.'" *Carlson* v. *Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (quoting Fed. R. Civ. P. 54(b)). Thus Rule 54(b) is *not* a proper vehicle to attack this Court's order

dismissing their complaint, which resolved *every* claim against *every* defendant. Notably, Plaintiffs do not cite a single decision applying Rule 54(b) under these circumstances.

*Second*, even if Rule 54(b) did apply, Plaintiffs have not met their heavy burden to show that reconsideration is warranted. Rule 54(b) permits "a court [to] revise an interlocutory order" only to address "(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Carlson*, 856 F.3d at 325 (quotations omitted). None of those circumstances arise here. In its thorough opinion, this Court correctly held that Plaintiffs failed to plead any connection between the alleged misstatements of VWGoA and two of its employees about a VWGoA marketing campaign and any security—let alone ADRs referencing securities issued by VWAG in Germany and traded outside the United States. Rather than engage with that reasoning, Plaintiffs' grossly mischaracterize this Court's order, claiming that it somehow absolved all non-issuers of securities liability. *See* ECF No. 71 (Mem.), at 13-17. This Court did no such thing. Instead, it carefully examined the Complaint and found no allegations establishing a connection between the conduct of two of VWGoA's U.S. employees and the ADRs referencing VWAG's foreign-traded stock—a conclusion that was entirely correct, particularly given that no court has ever adopted Plaintiffs' unprecedented theory of liability under the U.S. securities laws.

To the limited extent that Plaintiffs do address the substance of this Court's decision, they principally rely on a *blog post* to demonstrate "clear error causing manifest injustice." Mem. at 17-19. Online commentary is plainly insufficient to justify reconsideration. As Defendants explained in their briefing, this Court should not subject a U.S. subsidiary that issues no securities (and two of its employees) to an expensive and time consuming litigation based on an April Fool's Day joke having nothing to do with securities or the U.S. securities markets.

Because Plaintiffs' renewed motion for reconsideration is procedurally invalid and substantively incorrect, the Court should deny it. But if the Court takes the extraordinary step of reconsidering its earlier decision, it should also revisit its holding that Plaintiffs adequately pleaded scienter as to VWGoA and its employees. To plead scienter, a securities fraud plaintiff must plead particularized facts that raise a "strong inference" that the "defendants either knowingly or recklessly defrauded investors." *Yates* v. *Municipal Mortg. & Equity, LLC*, 744 F.3d 874, 885 (4th Cir. 2014). In this Circuit, allegations that defendants acted "innocently, or even negligently," are not enough. *Id*. Plaintiffs do not identify a single reason that Defendants would have wanted investors to respond to a marketing campaign aimed at potential purchasers of Volkswagen electric vehicles. This case should be dismissed on that basis alone.

## PROCEDURAL HISTORY

Plaintiffs' Complaint alleges that VWGoA (a sales distribution subsidiary that issues no stock at all), VWAG (VWGoA's parent company that issues stock traded only outside the United States), and two of VWGoA's employees (Scott Keogh and Mark Gilles) violated the U.S. securities laws by conducting a marketing campaign, during which they said, right before April Fool's Day, that VWGoA was changing its name to "Voltswagen" for 36 hours until the "joke" was revealed to the public. On March 14, 2023, this Court correctly dismissed the Complaint in its entirety, explaining that Plaintiffs had failed to plead that VWAG was responsible for this April Fool's Day marketing campaign. Order at 33-34. And "[w]ithout a plausible theory of liability ascribed to the issuer," Plaintiffs could not establish a connection between VWGoA's and its two employees' alleged misstatements and Plaintiffs' transactions in unsponsored VWAG ADRs. Order at 52.

This Court gave Plaintiffs the opportunity to move to amend their complaint, and Plaintiffs filed a motion to amend on March 28, 2023. *See* ECF No. 52. Plaintiffs also filed a

-3-

motion for reconsideration "[p]ursuant to Federal Rule of Civil Procedure 59(e)," ECF No. 49, at 1, claiming that "there was a clear error of law in the Court's" order. ECF 50, at 5. Defendants opposed that motion, explaining that Rule 59(e) provides an "extraordinary remedy" that cannot be invoked simply because of Plaintiffs' "mere disagreement" with this Court's decision. ECF No. 57, at 3 (quoting *Hutchinson* v. *Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993)).

In response, Plaintiffs' abandoned their argument under Rule 59(e) and now ask this Court to consider their motion instead under Rule 54(b). *See* ECF No. 59, at 6. On February 15, 2024, this Court denied Plaintiffs' motion for reconsideration, but permitted them "to file any renewed motion for reconsideration that includes all grounds for which they seek relief." ECF No. 69, at 4. Plaintiffs filed a renewed motion on March 25, 2024, which seeks relief ***only under Rule 54(b)***. *See* Mot. at 1.

## ARGUMENT

**I.     The Court Should Deny Plaintiffs' Renewed Motion For Reconsideration Under Rule 54(b).**

By its terms, Rule 54(b) applies to interlocutory orders and has no application where, as here, an order resolves every claim in the case. In going to great lengths to avoid that recognized limitation on Rule 54(b), Plaintiffs cite no decision applying Rule 54(b) to such an order. And, in any event, Plaintiffs cannot demonstrate that the Court's decision dismissing their unprecedented securities suit was erroneous, let alone was "clear error causing manifest injustice," as required to support relief under Rule 54(b). It bears repeating that no court has ever permitted a securities plaintiff to pursue a claim based on unsponsored ADRs without showing that the issuer of the foreign stock referenced by the ADRs was liable. In urging that this Court committed clear error, Plaintiffs rely on (i) a series of decisions that have nothing to do with their claim, and (ii) a short blog post. Inapposite case law and blog musings are plainly insufficient under Rule 54, Rule

59, or any other ground for reconsideration. *See Matter of Vulcan Constr. Materials, LLC*, 433 F. Supp. 3d 816, 820 (E.D. Va. 2019) ("mere disagreement with [a] court's ruling" does not support reconsideration under Rule 54(b) or Rule 59(e)); *see also U.S. Tobacco Coop.* v. *Big South Wholesale of Virginia, LLC*, 899 F.3d 236, 258 (4th Cir. 2018) (reversing a district court's grant of a motion for reconsideration where its prior decision resolved "conflicting views in the record").

### A.    Plaintiffs Cannot Seek Relief Under Rule 54(b).

Rule 54(b) allows a district court to revise an interlocutory order to address new evidence, a change in the law, or, as relevant here, "clear error causing manifest injustice." *Carlson*, 856 F.3d at 325 (quotations omitted). By its plain terms, Rule 54(b) applies only to orders that adjudicate "fewer than all the claims or the rights and liabilities of fewer than all the parties" in a case. As Plaintiffs' cited cases demonstrate, courts apply Rule 54(b) only to *interlocutory* decisions, such as decisions *denying* a motion to dismiss, *see, e.g.*, *Matter of Vulcan Constr. Materials, LLC*, 433 F. Supp. 3d at 820; granting partial summary judgment, *see, e.g.*, *Randolph* v. *Joe Holland Chevrolet, Inc.*, 2005 WL 2428164, at *1 (S.D. W. Va. Sept. 30, 2005); or amending a judgment to allow a case to proceed to trial, *see, e.g.*, *June* v. *Thomasson*, 2017 WL 3642944, at *2 (D. Md. Aug. 24, 2017). Rule 54(b) does *not* apply to orders *granting* motions to dismiss resolving *all* of the claims in a case, as this Court did here. *Compare Katyle* v. *Penn Nat. Gaming, Inc.*, 637 F.3d 462, 470 n.4 (4th Cir. 2011) (applying Rule 59(e) to a motion seeking reconsideration of an order dismissing the entire case); *Hanover Ins. Co.* v. *Corrpro Companies, Inc.*, 221 F.R.D. 458, 459 (E.D. Va. 2004) (same).

There is no dispute here that this Court's Order resolved every claim against every Defendant. *See* Mem. at 5. Thus, Plaintiffs cannot seek relief under Rule 54(b), and the Court should stop here. If Plaintiffs wish to continue pressing their claims, the proper mechanism for doing so is through their motion to amend, which the Court held in abeyance pending the outcome

of their renewed motion for reconsideration.  ECF No. 73; *see Finn* v. *Spiker*, 2005 WL 4663687, at *1 (E.D. Va. Sept. 13, 2005), *aff'd*, 172 Fed. Appx. 509 (4th Cir. 2006) ("Relief under 59(e) is not warranted" when an "action was dismissed without prejudice" and the plaintiff "is free to file a new action.").

Plaintiffs offer two arguments in support of their Rule 54(b) motion.  *First*, they say that "Rule 54(b) permits reconsideration" because the Court's decision to dismiss their Complaint without prejudice adjudicated "fewer than [all their] rights and liabilities." Mem. at 10.  Plaintiffs cite no support for that proposition.  And it makes little sense on its own terms.  Plaintiffs identify no "rights" or "liabilities" that remain to be resolved with respect to the Court's order dismissing their Complaint in its entirety.

Recognizing that Rule 54(b) does not apply to their motion, Plaintiffs also observe, quoting *American Canoe Ass'n* v. *Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003), that district courts retain the "power … to reconsider an earlier ruling" and "to reach a correct judgment under law."  Mem. at 10.   But in discussing a court's inherent "power to reconsider and modify" its prior rulings, the Fourth Circuit in *American Canoe* was discussing "*interlocutory* judgments, including partial summary judgments," and cited to Rule 54(b) for support.  326 F.3d at 514-515 (emphasis added); *id*. at 515 (reiterating that litigants must demonstrate that "a prior decision was clearly erroneous or would work manifest injustice" before a court will revisit an interlocutory order).  For that reason, Plaintiffs cannot evade the limits on relief under Rule 54(b) by asking this Court to exercise its "inherent power" instead.[1]

---

[1] Plaintiffs rely on decisions applying Rule 59(e) to argue that "[t]here is nothing improper about simultaneously filing a motion for reconsideration and a motion to amend."  Mem. at 11 (citing *Wilson* v. *B&B Properties*, 2021 WL 4583644 (D.S.C. Oct. 5, 2021)).  Plaintiffs have waived any argument under Rule 59(e).   This Court allowed Plaintiffs to file a "renewed motion for

**B.      Plaintiffs Have Not Identified Any "Manifest Injustice" Created By This Court's Decision.**

On the merits, Plaintiffs' motion also fails.  Plaintiffs' Complaint alleged an unprecedented and attenuated theory of securities liability:  That a foreign company's wholly-owned U.S. subsidiary (VWGoA), which does not issue securities of any kind, can be held liable for securities fraud for its alleged misstatements that do not mention securities, on the ground that those statements are somehow connected to unsponsored ADRs referencing shares issued by its foreign parent (VWAG) and traded only outside the United States.  Only one court has ever permitted a private securities claim to move forward based on unsponsored ADRs.  *See Stoyas* v. *Toshiba Corp.*, 424 F. Supp. 3d 821, 826 (C.D. Cal. 2020).  And Plaintiffs' claim goes even further than *Stoyas* because it is based on the conduct of a U.S. subsidiary, not a foreign issuer.  *Id*. at 828 (holding that plaintiffs "plausibly demonstrate[d]" a connection between a *foreign issuer's* "conduct and the purchase or sale of the ADRs" that referenced *that issuer*).[2]

In rightly rejecting Plaintiffs' claim here, this Court carefully examined existing precedent and applied it to the novel facts alleged in the Complaint, namely, Plaintiffs exclusive reliance on "the statements of a non-publicly traded wholly-owned subsidiary and its employees." Order at 52.  It then concluded that Plaintiffs had not satisfied Section 10(b)'s "in connection with" requirement because they put forward no allegations connecting "Plaintiffs' purchase or sale of Volkswagen ADRs" to "the alleged false statements of the Individual Defendants and VWGoA." Order at 42.  The Court's thorough analysis was correct.  The Court certainly did not clearly depart

---

reconsideration *that includes all grounds for which they seek relief*." ECF No. 69, at 4 (emphasis added).  And Plaintiffs filed a renewed motion that seeks relief under only Rule 54(b).

[2] Notably, Plaintiffs do not rely on *Stoyas*—the only federal court decision to address the "in connection with" requirement in a case involving unsponsored ADRs—in claiming that this Court's decision was clearly erroneous.

from any precedent of the Supreme Court or the Fourth Circuit—nor could it have, given that Plaintiffs' claim involves novel facts out of a law school exam.[3]  Because the Court's analysis of the "in connection with" requirement did not conflict with any binding decision, Plaintiffs are not entitled to reconsideration under Rule 54(b) or any possible standard.  *See Bellsouth Telesensor* v. *Information Sys. & Networks Corp*, 1995 WL 520978, at *5 n.6 (4th Cir. 1995) ("To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish."); *see also TFWS, Inc.* v. *Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (same).

Attacking a straw man, Plaintiffs critique this Court's ruling on the motion to dismiss on the ground that "persons other than the issuer of the subject security can be held primarily liable under Section 10(b) for false statements of material fact in connection with the purchase or sale of securities."  Mem. at 15.  But the Court did not question that proposition. Instead, it applied the settled rule that a non-issuer can be held liable only when its alleged misstatements "touch[]" and "coincide[]" with the securities transactions at issue in the suit.  *SEC* v. *Pirate Inv. LLC*, 580 F.3d 233, 244 (4th Cir. 2009).  That requirement was not met here because the only possible way to connect non-issuer VWGoA's April Fools' Day marketing campaign to unsponsored VWAG ADRs was through VWAG, but, as the Court explained, Plaintiffs alleged no facts showing that VWAG was involved in or approved of this marketing campaign.  If there were any doubt about the limited reach of the Court's decision, it is resolved by the Court's clear

---

[3] Plaintiffs previously suggested that the unprecedented nature of their claim against VWGoA and two of its employees was irrelevant to the Court's reasoning.  ECF No. 59, at 8.  But the Court's analysis of the "in connection with" requirement turned on the lack of connection between "the alleged false statements by the Individual Defendants and VWGoA," and "the ADRs purchased by Plaintiffs," which referenced VWAG's foreign stock.  Order at 52.  Moreover, the Court correctly explained that only VWAG (not VWGoA) "receive[d] the benefit of demand on its foreign shares from depositary banks seeking to distribute [ADRs]."  Order at 51.

statement that "underwriters, brokers, bankers, and non-issuer sellers" should not be placed "beyond the reach" of the securities laws.  Order at 47 (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 102 (2d Cir. 2007)).[4]

Plaintiffs claim that "a plethora of cases" undermine the Court's position.  Mem. at 15.  But each of Plaintiffs' cases in fact further demonstrates that their claim was correctly dismissed.  Much of Plaintiffs' argument is devoted to *Pirate Investors*, where the Fourth Circuit held that the publisher of an investment newsletter that disseminated false information about a public company could be held liable for securities fraud.  *See* 580 F.3d at 237.  In holding that the "in connection with" requirement was satisfied in that case, the Fourth Circuit explained "that securities purchases were necessary to complete [the] fraudulent scheme," "that [defendants] made their misrepresentations with the intent to induce securities transactions," and "that [defendants] directed the misrepresentations to investors that they knew were likely to rely on them."  *Id*. at 252.  Plaintiffs' claim checks none of those boxes.  Plaintiffs do not allege that VWGoA's April Fools' marketing campaign turned on investor reaction or was directed toward securities markets (let alone the market for unsponsored VWAG ADRs).  *See* Compl. ¶137 (alleging that the joke "provided the company with . . . publicity"); *id*. ¶ 159 (alleging that Defendants were "motivated by their desire to gain publicity for the ID.4" electric vehicle).

Plaintiffs previously asked this Court to overlook those flaws in their legal theory because Plaintiffs alleged that reasonable investors would rely on the statements made during the

---

[4] Plaintiffs previously argued that "the Court did not hold that pursuing a claim against a subsidiary based on securities related to a foreign parent would undermine the legal distinction between the parent and subsidiary."  ECF No. 59, at 9.  But that characterization is refuted by the Court's decision, which rejected the notion "that the statements of a non-publicly traded wholly-owned subsidiary and its employees may be actionable upon the parent issuer when the Amended Complaint fails to adequately plead that the alleged material misstatements may be attributed to the parent issuer."  Order at 52.

April Fools' joke. ECF No. 59, at 9. But *Pirate Investors* does not suggest that factor alone is dispositive. On the contrary, the Fourth Circuit in *Pirate Investors* relied on many specific findings that are clearly not present in this case, including that (i) "securities purchases . . . would inure to the benefit of" the individuals who made the misstatements, and (ii) the defendants' "own definition of success depended on people purchasing securities in reliance" on their statements. 580 F.3d at 247-248. And most importantly, *Pirate Investors* did not involve an attempt to pursue a securities fraud claim based on unsponsored ADRs that referenced the foreign stock of a company (VWAG) that had nothing to do with the alleged misstatements. So even if there were uncertainty about the proper application of *Pirate Investors* in that novel context, it would not show "clear error" in this Court's decision.

Plaintiffs also cite a pair of decisions allowing Section 10(b) claims to proceed against non-issuers. But the defendant in each of those cases made statements that were directly connected to the securities giving rise to the Plaintiffs' claim. *See* Mem. at 15-16. In *Aegean Marine Petroleum Network Inc. Securities Litigation*, the district court held that plaintiffs who had purchased a public company's stock could pursue a claim against an outside auditor based on the auditor's reckless statements about *that company's* finances. 529 F. Supp. 3d 111, 157 (S.D.N.Y. 2021). Similarly, in *Turquoise Hill Resources Ltd. Securities Litigation*, the district court allowed a claim brought by plaintiffs who traded a parent company's stock to move forward against a subsidiary that allegedly made a series of misstatements about a major project undertaken by *that parent*. 625 F. Supp. 3d 164, 201 (S.D.N.Y. 2022). Both cases had what is lacking here: a connection between the plaintiffs' securities transactions and the defendants' alleged

misstatements.   By contrast, VWGoA's April Fools' Day marketing campaign said nothing whatsoever about VWAG or unsponsored VWAG ADRs.[5]

Plaintiffs' only citation that has anything to say about ADRs or their novel theory of liability is a blog post by Ann Lipton, a professor at Tulane University.  *See* Ann Lipton, "There's No Joking in Securities Law," Bus. L. Prof Blog (Mar. 18, 2023), https://tinyurl.com/29auzjvu.  An academic's different take is obviously insufficient to show "clear error causing manifest injustice."  To establish that the Court was clearly wrong in its application of the "in connection with" requirement as applied to unsponsored ADRs, Plaintiffs need to show that the Court ignored controlling precedent, not a non-peer-reviewed bit of legal commentary.

But even on its own terms, Lipton's post does little to help Plaintiffs' case.  *First*, her commentary is clearly driven by her normative disagreement with the law, not an attempt to apply the law as it currently exists.  The most obvious example of this is her criticism of "the artificiality of treating Volkswagen as distinct from its wholly-owned subsidiary."  Whatever Professor Lipton may think of the "artificiality" of that distinction, that distinction is an irrefutable feature of securities law, as recognized by the Supreme Court in *Janus Cap. Grp., Inc.* v. *First Deriv. Traders*, 564 U.S. 135, 146 (2011) (stressing the importance of "corporate formalities" to liability under Section 10(b)); *see In re Turquoise Hill Resources Ltd. Sec. Litig.*, 625 F. Supp. 3d

---

[5] Plaintiffs' other authorities are even further afield.  In *SEC* v. *Woolf*, 835 F. Supp. 2d 111, 114 (E.D. Va. 2011), the defendants were held liable for "carr[ying] out a scheme to dupe inexperienced investors into buying seminar packages and trading stocks with lies and misrepresentations about their background and expertise as traders."  This Court held that the scheme was connected to securities because Defendants "urged their workshop students to trade securities."  *Id*. at 120.  And in *Galena Biopharma, Inc. Securities Litigation*, 117 F. Supp. 3d 1145, 1156, 1191 (D. Ore. 2015), the district court allowed a claim to proceed against stock promotors who participated in a "fraudulent scheme to promote [a company's] stock price" to facilitate "a 'pump and dump' insider trading scheme."  Both cases involved an obvious connection between the plaintiffs' securities transaction and the defendants' unlawful conduct.

at 206.  Professor Lipton's views cannot undermine this Court's well-reasoned analysis that it would "contravene *Janus* [to hold] that the statements of a non-publicly traded wholly-owned subsidiary and its employees may be actionable upon the parent issuer when the Amended Complaint fails to adequately plead that the alleged material misstatements may be attributed to the parent issuer."  Order at 52.

*Second*, Professor Lipton's analysis of the "in connection with" requirement suffers from the same defect as Plaintiffs':  she fails to appreciate that VWGoA *does not issue any stock at all*.  In her blog post, she rhetorically asks:  "Why should VWGoA's liability for false public statements turn on whether [the] Volkswagen parent is liable?" and contends that the Court erred by considering the two issues related.  But, as the Court properly understood, the only way to connect VWGoA's April Fool's joke to a securities fraud suit based on unsponsored ADRs is through VWAG, which is the only Defendant that has issued common stock, although not in the U.S. securities markets.[6]

## II.    If the Court Grants Plaintiffs' Motion, It Should Also Reconsider Whether Plaintiffs Plausibly Alleged Scienter.

This Court should not take the extraordinary step of reconsidering its prior decision, but if it does, it should also revisit its holding that Plaintiffs adequately pleaded scienter as to VWGoA and the two Individual Defendants, Scott Keogh and Mark Gillies.  To Defendants' knowledge, no court has ever held that a securities fraud plaintiff pleaded scienter when no individual defendant or corporate agent had any plausible reason to deceive investors or stood to gain in any way from investors' reliance on the alleged misstatements.  That is the case here, as

---

[6] Plaintiffs also ask the Court to reconsider its decision dismissing their claim against VWAG for "control person" liability under Section 20(a) of the Exchange Act.  *See* Mem. at 19-20.  That request rests on Plaintiffs' erroneous argument that VWGoA and the Individual Defendants are "primarily liable under" Section 10(b), Mem. at 19, and should be rejected for the same reasons.

Plaintiffs have failed to identify a single reason why Defendants sought to induce a 36-hour bump in the price of unsponsored VWAG ADRs, particularly when Plaintiffs do not even allege that Messrs. Keogh and Gillies knew about the existence of such ADRs.

Under the Private Securities Litigation Reform Act ("PSLRA"), Plaintiffs have the burden to plead "with particularity facts giving rise to a strong inference" that Messrs. Keogh and Gillies acted with the "intent to deceive, manipulate, or defraud" investors or with "severe recklessness" as to that result. *Maguire Fin., LP* v. *PowerSecure Int'l, Inc.*, 876 F.3d 541, 546–47 (4th Cir. 2017). The PSLRA calls for a "comparative inquiry" of Plaintiffs' allegations against "plausible opposing inferences." *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd*, 551 U.S. 308, 323 (2007). Plaintiffs can survive a motion to dismiss only if the allegations in the Complaint create "a strong inference, at least as compelling as any opposing inference, that the . . . defendant[] either knowingly or recklessly defrauded investors." *Yates*, 744 F.3d at 885.

Here, there is only one plausible inference to draw from Plaintiffs' allegations: that Messrs. Keogh and Gillies made a joke to highlight VWGoA's undeniably true commitment to electric cars. The joke was rolled out right before April Fools' Day, was aimed at consumers of electric vehicles, and included information about VWGoA's ongoing efforts to electrify its vehicles. Against that innocent inference, there are no allegations demonstrating that the "Voltswagen" campaign reflected an intentional or severely reckless scheme to harm investors in unsponsored VWAG ADRs. There are no allegations that Messrs. Keogh and Gillies benefitted from the joke, that any aspect of the joke was aimed at investors or securities markets, or that they intended to deceive investors in unsponsored VWAG ADRs in any way. Under the "comparative inquiry" called for by *Tellabs* and *Yates*, that should have been the end of the matter.

-13-

Respectfully, the Court's holding to the contrary was clearly erroneous. The Court reasoned that Plaintiffs had adequately pleaded scienter because they alleged facts showing that "the Individual Defendants knew facts or had access to information suggesting [their] public statements were not accurate." Order at 42 (citations and quotation marks omitted); *see id.* at 37-38 (noting that Defendants "confirmed the legitimacy of the name change to the press" and "confirm[ed] to inquiring journalists the seriousness of the press release"). But that is the definition of falsity, not scienter. And there is no dispute here that Messrs. Keogh and Gillies made false statements—on the contrary, false statements are part and parcel of an April Fools' joke. The problem for Plaintiffs is they have not shown that Messrs. Keogh and Gillies made those false statements as part of a scheme *to defraud investors* in unsponsored VWAG ADRs or "must have been aware" *that investors would be harmed* by the joke. *Ottmann* v. *Hanger Ortho. Grp., Inc.*, 353 F.3d 338, 343-44 (4th Cir. 2003) (explaining that acts are severely reckless when they are "so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it"). The Court's analysis did not address that critical issue, and therefore conflated two separate elements of a Section 10(b) claim: the requirement to allege a material misstatement and the requirement to allege scienter. *See Maguire*, 876 F.3d at 548.

That error undermined the Court's analysis of whether the "inferences favoring Plaintiff" were more plausible than "nonculpable explanations for the defendant's conduct." *Tellabs*, 551 U.S. at 324. In conducting that "comparative inquiry," the Court first considered the obvious inference that VWGoA carried out a 36-hour April Fools' Day joke to generate truthful attention for its electric vehicles. But even though that inference has nothing to do with investors

-14-

in unsponsored VWAG ADRs, the Court held that it cut *in favor of scienter*.  The Court then considered two alternative inferences not suggested by either party—(i) that VWGoA seriously intended to change its name and never misled the press, and (ii) that VWGoA "push[ed] a name change for the express purpose of obtaining 'free publicity' [but] after a sloppy, mistimed announcement, used April Fools' Day as a scapegoat mechanism," Op. 39—and concluded that the second, more nefarious inference was more plausible.  But Plaintiffs do not dispute that VWGoA made a joke.  Rather, Plaintiffs claim that the innocent explanation for the joke—that VWGoA carried out the joke to drive truthful publicity for its products like many companies before it—was less plausible than their theory that VWGoA intended to juice the price of unsponsored VWAG ADRs for 36 hours or must have been aware that investors would react to the joke.  The Court never answered that question.

All told, the Court held that Plaintiffs adequately pleaded scienter even though the Complaint does not allege that Messrs. Keogh and Gillies intended any reaction from investors in unsponsored VWAG ADRs to the 36-hour "Voltswagen" joke, much less even considered those investors in developing this marketing campaign, which was plainly intended to impact consumers by highlighting Volkswagen's truthful commitment to the sale of electric vehicles.  As far as Defendants are aware, no court has ever allowed such a weak fraud claim to survive a motion to dismiss, and that result runs counter to binding precedent from the Supreme Court and the Fourth Circuit.  Therefore, if the Court reconsiders its earlier decision in light of Plaintiffs' argument on the "in connection with" requirement, it should also reconsider its full decision, including its holding that Plaintiffs met the PSLRA's demanding standard for scienter.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' Renewed Motion for Reconsideration.

MCGUIREWOODS LLP

*/s/ Garrett H. Hooe*
Garrett H. Hooe (VSB No. 83893)
Gateway Plaza
800 Canal Street
Richmond, Virginia 23219
Tel: 804-775-1065
Fax: 804-698-2079
ghooe@mcguirewoods.com

SULLIVAN & CROMWELL LLP

Robert J. Giuffra, Jr. (*pro hac vice*)
Sharon L. Nelles (*pro hac vice*)
125 Broad Street
New York, NY 10004
Tel: 212-558-4000
Fax: 212-558-3558
giuffrar@sullcrom.com
nelless@sullcrom.com

Laura Kabler Oswell (*pro hac vice*)
1870 Embarcadero Road
Palo Alto, California 94303
Tel.: 650-461-5600
Fax: 650-461-5700
oswelll@sullcrom.com

Daniel J. Richardson (VSB No. 94961)
1700 New York Avenue NW
Washington, D.C. 20006
Tel:  202-956-7500
Fax:  202-293-6330
richardsond@sullcrom.com

*Counsel for Defendants Volkswagen AG, Volkswagen Group of America, Inc., Scott Keogh, and Mark Gillies*

April 8, 2024

-16-

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2024, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF filing system, which will send notification of electronic filing (NEF) to all counsel of record.

/s/ Garrett H. Hooe
Garrett H. Hooe (VSB No. 83983)
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel:  804-775-1065
Fax:  804-698-2079
ghooe@mcguirewoods.com

*Counsel for Defendants Volkswagen AG, Volkswagen Group of America, Inc., Scott Keogh, and Mark Gillies*

-17-