**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| *In re Volkswagen AG Securities Litigation* | **Case No. 1:22-cv-00045-RDA-TCB** |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF RENEWED MOTION FOR RECONSIDERATION OF THE COURT'S MARCH 14, 2023 ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................... 4

ARGUMENT............................................................................................................................. 7

   A. Plaintiffs' Motion for Reconsideration is Proper............................................................. 7

   B. The Court Should Grant Plaintiffs' Motion for Reconsideration .................................. 10

   C. The Court Should Deny Defendants' Improper Request to Reconsider Its Opinion on Scienter................................................................................................................................ 15

CONCLUSION ....................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
  326 F.3d 505 (4th Cir. 2003).................................................................................................... 7

*Appalachian Power Co. v. Nissen*,
  No. 7:14-CV-000535, 2015 WL 1538809 (W.D. Va. Apr. 7, 2015) ........................................ 7

*Carlson v. Bos. Sci. Corp.*,
  856 F.3d 320 (4th Cir. 2017).................................................................................................... 8

*Finn v. Spiker*,
  2005 WL 4663687 (E.D. Va. 2005) .......................................................................................... 9

*In re Building Materials Corp. of America Asphalt Roofing Shingle Products Liability Litig.*,
  2013 WL 3337833 (D.Sc. July 2, 2013) .................................................................................. 9

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135, 131 S. Ct. 2296, 180 L. Ed. 2d 166 (2011) ...................................................... 10

*Matter of Vulcan Constr. Materials, LLC*,
  433 F. Supp. 3d 816 (E.D. Va. 2019)....................................................................................... 5

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
  547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006) ........................................................ 10

*N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*,
  707 F. Supp. 2d 520 (D.N.J. 2010) .......................................................................................... 5

*Ottmann v. Hanger Orthopedic Grp., Inc.*,
  353 F.3d 338 (4th Cir. 2003).................................................................................................... 15

*Randolph v. Joe Holland Chevrolet, Inc.*, No. CIV.A.,
  2:00-1132, 2005 WL 2428164 (S.D.W. Va. Sept. 30, 2005)................................................... 7

*S.E.C. v. Texas Gulf Sulphur Co.*,
  401 F.2d 833 (2d Cir. 1968)................................................................................................. 5, 11

*Semerenko v. Cendant Corp.*,
  223 F.3d 165 (3d Cir. 2000).................................................................................................... 11

*Singer v. Reali*,
  883 F.3d 425 (4th Cir. 2018).................................................................................................... 17

*Sinnathurai v. Novavax, Inc.*,
   645 F. Supp. 3d 495 (D. Md. 2022) ...................................................................... 11

*Stoyas v. Toshiba Corp.*,
   424 F. Supp. 3d 821 (C.D. Cal. 2020) .............................................................. 11, 12

*Tellabs Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308 (2007) ...................................................................................... 15, 16

*U.S. S.E.C. v. Pirate Investors LLC,*
   580 F.3d 233 (4th Cir. 2009) ........................................................................ passim

*U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC,*
   899 F.3d 236 (4th Cir. 2018) ................................................................................ 8

*Wilson v. B&B Properties,*
   2021 WL 4583644 (D. Sc. Oct 5, 2021) ............................................................... 9

*Yates v. Mun. Mortg. & Equity, LLC,*
   744 F.3d 874 (4th Cir. 2014) .............................................................................. 15

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
   780 F.3d 597 (4th Cir. 2015) .............................................................................. 11

## Statutes

42 U.S.C.A. § 1983 ................................................................................................ 9

## Rules

Fed. R. Civ. P. 54 .......................................................................................... 5, 7, 8

Fed. R. Civ. P. 59 ............................................................................................. 8, 9

Lead Plaintiff Laszlo Rozsavolgyi and named Plaintiff Thomas Wells ("Plaintiffs") respectfully submit this reply memorandum of law in further support of their renewed motion for reconsideration of this Court's March 14, 2023 Memorandum Opinion and Order granting Defendants' Motion to Dismiss the Amended Complaint.

## INTRODUCTION

In the Court's March 14, 2023 Opinion and Order ("Opinion") it held that Plaintiffs' Complaint adequately alleged falsity, scienter, and loss causation- the traditionally contested elements in securities fraud class actions. The Court also held rejected Defendants' assertion that liability could not attach on the basis that the ADRs at issue were "unsponsored." Finally, the Court held that the alleged false statements were made "in connection with" Plaintiffs' ADR transactions ("Plaintiffs' allegations provide a plausible basis that the alleged misstatement 'touches' or 'coincides' with the purchase or sale of any other security in the United States.'") Opinion at 51). However, Plaintiffs respectfully submit that the Court erred in conflating the requirements of *Janus,* as to when a statement can be attributed to a party, with the requirement that fraudulent activity must touch or coincide with a securities transaction. Indeed, the Court dismissed based on its desire to not to contravene *Janus:*

> The problem remains, however, that Plaintiffs have not adequately demonstrated that Volkswagen AG may be held liable under § 10(b) because the Amended Complaint does not state with the level of particularity demanded by the PSLRA that Volkswagen confirmed the publication of the press release. ***This Court will not contravene <u>Janus</u> by holding that the statements of a nonpublicly traded wholly-owned subsidiary and its employees may be actionable upon the parent issuer*** when the Amended Complaint fails to adequately plead that the alleged material misstatements may be attributed to the parent issuer. ***Without a plausible theory of liability ascribed to the issuer, Plaintiffs' purchase or sale of Volkswagen ADRs cannot be said to "touch[]" the ADR purchased by Plaintiffs because the issuer of the underlying securities has not been shown to be liable under § 10(b).***

(Opinion at 52).

As Plaintiffs' explained in their Opening Motion, the second portion of the bolded paragraph above does not follow from the first. As this Court recognized in the Opinion, under controlling Fourth Circuit precedent, the requirement that the purchase or sale of securities occur "in connection with" the alleged false statements does ***not*** require a securities trading relationship between the plaintiff purchasers and the individuals/entities responsible for making the false statements. *U.S. S.E.C. v. Pirate Investors LLC*, 580 F.3d 233, 244-52 (4th Cir. 2009). Instead, "Rule 10b-5 is violated whenever assertions are made…in a manner reasonably calculated to influence the investing public…" *S.E.C. v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 860 (2d Cir. 1968). Plaintiffs respectfully request that the Court reconsider its holding that Plaintiffs have not satisfied the "in connection with requirement," and cannot bring a claim as to VWGoA and the Individual Defendants without a theory of liability as to VWAG, because it does not comport with Fourth Circuit authority. Relatedly, so long primary as liability under 10(b) attaches to VWGoA and the Individual Defendants, VWAG is secondarily liable under 20(a) of the Exchange Act, given that the Court's Opinion that "unlike in *Nortel* the issuer here is alleged to control the entity responsible for making the false statements." (Opinion at 47).

The Court is well within its authority to reconsider the Opinion pursuant to F.R.C.P. 54 as well as its inherent authority to act to "reach the correct judgment under the law." *Matter of Vulcan Constr. Materials, LLC*, 433 F. Supp. 3d 816, 820 (E.D. Va. 2019)*, quoting N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 707 F. Supp. 2d 520, 547 (D.N.J. 2010).

First, Defendants make technical arguments in their Opposition ("Opp." (Dkt. 74)) as to why reconsideration is improper under Rule 54, which governs reconsideration of interlocutory orders. Of course Defendants also previously asserted that reconsideration was inappropriate under Rule 59, which governs reconsideration of final orders. But a Court's order is either final or

interlocutory. Defendants' arguments concerning the procedural validity of Plaintiffs' Motion rely on sophistry. Defendants fail to point to any legal authority limiting the Court's discretion to reconsider its own opinion under the circumstances present here. Defendants also fail to point to any logical or practical reason, such as prejudice or burden, as to why reconsideration is improper.

Second, as to the substance of Plaintiffs' analysis of the Court's grounds for error, Defendants claim that Plaintiffs' motion does not engage with the Court's Opinion. But it is Defendants who fail to engage with the Court's Opinion, substituting and interposing their own analysis and passing it off for the Court's. Defendants' interpretation of the Court's Opinion is entirely extratextual. Defendants make connections where none exist, taking the Court's holding and injecting rationales found nowhere in the Opinion. Defendants also attack Plaintiffs' citation to Professor Lipton's analysis, arguing that Plaintiffs' Motion "principally rel[ies] on a blog post." Plaintiffs' Motion in no way relies on Professor Lipton's post, it merely cites it as confirming Plaintiffs' interpretation of the Opinion. As Defendants well know, Plaintiffs' initial motion for reconsideration did not even reference the post, as it had only then been recently published.

Finally, Defendants improperly ask the Court to reconsider its well-reasoned and thorough Opinion on scienter. Defendants cite no controlling precedent contravening the Court's Opinion as to warrant reconsideration, and no rule of law that the Court's Opinion contradicts. Instead, Defendants merely fault the Court for not adopting their view.

For the reasons set forth herein and in Plaintiffs' Renewed Motion, Plaintiffs respectfully request that the Court grant Plaintiffs' Renewed Motion and decline Defendants' request to reconsider its Opinion as to scienter.

6

## ARGUMENT

### A.    Plaintiffs' Motion for Reconsideration is Proper

Federal Civil of Civil Procedure 54(b) provides that an: "order or other decision, however designated, that adjudicates ***fewer than all*** the claims ***or the rights and liabilities*** of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims ***<u>and all the parties' rights and liabilities</u>***. Fed. R. Civ. P. 54(b) (emphasis added). "The United States Court of Appeals for the Fourth Circuit has explained that reconsideration of an interlocutory order may be appropriate when '(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was ***clearly erroneous and would work manifest injustice***.'" *Appalachian Power Co. v. Nissen*, No. 7:14-CV-000535, 2015 WL 1538809, at *1 (W.D. Va. Apr. 7, 2015), quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) (emphasis added).

Rule 54(b) permits reconsideration here because it applies to orders that do not end the action. Rule 54(b) not only refers to any order "however designated" that adjudicates "fewer than all of the claims," but also, disjunctively (i.e. "or") "fewer than the ***rights and liabilities*** of fewer than all of the parties." Rule 54. The Court's Opinion adjudicated fewer than all of Plaintiffs' rights because it permitted Plaintiffs to file a motion to amend. Because the Court's Opinion did not end the action, reconsideration under Rule 54 is appropriate. Further, "the decision to revise an earlier order is committed to the discretion of the district court." *Appalachian Power Co. v. Nissen*, No. 7:14-CV-000535, 2015 WL 1538809, at *1 (W.D. Va. Apr. 7, 2015); *Randolph v. Joe Holland Chevrolet, Inc.*, No. CIV.A. 2:00-1132, 2005 WL 2428164, at *2 (S.D. W.Va. Sept. 30, 2005) (rejecting assertion that legal doctrines such as law of the case  limits ability to court to reconsider

7

earlier ruling because it "does not and cannot limit the power of a court to reconsider an earlier ruling. ***The ultimate responsibility of federal courts, at all levels, is to reach the correct judgment under the law.***").

As Defendants' cited authority holds "[c]ompared to motions to reconsider *final* judgments pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Rule 54(b)'s approach involves broader flexibility to revise *interlocutory* orders before final judgment as the litigation develops and new facts or arguments come to light." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (Opp. at 2, 5). Defendants strain to argue that the Court lacks the discretion to reconsider its Opinion under Rule 54, glossing over the fact that the Opinion did not dispose of all of Plaintiffs' "rights" because it permitted Plaintiffs to file a motion to amend. Defendants essentially argue that the Opinion is not final enough to permit application of Rule 59, yet too final to permit application of Rule 54. A court's order is either interlocutory- which the dictionary defines as "made during the progress of a legal action and not final or definitive[1]"- or it is final. There are no other options that permit Defendants to conjure an argument that the Court lacks the discretion to reconsider its ruling. And Defendants have pointed to no case holding that a federal district court lacks authority to reconsider its own rulings to "reach the correct judgment under the law."[2]

Defendants also offer no reason why the court should not be permitted to use its discretion to "reach the correct judgment under the law." This is not a case in where reconsideration prejudices any party or imposes a burden on the Court, just the opposite. It is not as if, for example,

---

[1] https://www.merriam-webster.com/dictionary/interlocutory

[2] Defendants cite *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (Opp. at 5). But in that case the Court of Appeals reversed a *new* district judge's decision to reconsider the *prior* judge's ruling because "[the new judge's] decision [was not] based upon the 'clear error causing manifest injustice' exception," and held that "where, as here, the order was entered by one judge and then reviewed by another, ... the latter judge should be hesitant to overrule the earlier determination."

the court is being asked to reconsider an order granting a monetary judgment that has already been paid and reconsideration would cause the other party to have to return funds already spent. Defendants' insistence on elevating form over substance only underscores the weakness in their substantive arguments opposing Plaintiffs' Renewed Motion.

Additionally, there is nothing improper about simultaneously filing a motion for reconsideration and a motion to amend. *See, e.g., Wilson v. B&B Properties* 2021 WL 4583644 (D. Sc. Oct 5, 2021) (considering motion for reconsideration and to amend the complaint simultaneously); *In re Building Materials Corp. of America Asphalt Roofing Shingle Products Liability Litig.*, 2013 WL 3337833 at *2 (D.Sc. July 2, 2013) (considering motion to reconsider under Rule 59 or in the alternative to amend under Rule 15, holding that the motion "must be analyzed in two parts" because of the different legal standards that apply).[3] Here, the circumstances of this case required Plaintiffs to file their initial motion for reconsideration contemporaneous with their motion to amend to preserve their rights, given that the Court ordered Plaintiffs to file a motion to amend within 14 days of issuing its Opinion. In addition, Plaintiffs' motion for reconsideration asks the Court to reconsider its ruling dismissing Plaintiffs' 10(b) claims only as to VWGoA and the Individual Defendants, *not* the 10(b) claim as to VWAG. The proposed amendments in Plaintiffs' Second Amended Complaint pertain to VWAG. There is therefore no reason and no need to wait for another round of briefing on a motion to dismiss to address the error Plaintiffs raise in their reconsideration motion. To the contrary, it would be more efficient for the

---

[3] *Finn v. Spiker*, 2005 WL 4663687 at *1-2 (E.D. Va. 2005) (Opp. at 6) is concerned a 42 U.S.C.A. § 1983 action where the court dismissed the action of a plaintiff proceeding *in forma pauperis* because the plaintiff failed to return a form or pay a statutory filing fee. The court found plaintiff did not attempt to explain how he satisfied any of the grounds for relief under 59(e) and that he could simply refile the action given his dismissal was without prejudice.

Court and the parties to address only the narrow issue of VWAG's liability under *Janus* in the briefing on the anticipated motion to dismiss the Proposed Second Amended Complaint.

**B.    The Court Should Grant Plaintiffs' Motion for Reconsideration**

"Under Supreme Court case law, fraudulent activity meets the 'in connection with' requirement of § 10(b) whenever it 'touches" or "coincides' with a securities transaction. *U.S. S.E.C. v. Pirate Inv. LLC*, 580 F.3d 233, 244 (4th Cir. 2009), *quoting Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006) ("Under our precedents, it is enough that the fraud alleged 'coincide' with a securities transaction-whether by the plaintiff or by someone else."). Further, whether a corporate entity like VWAG makes a false statement for purposes of *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 131 S. Ct. 2296, 180 L. Ed. 2d 166 (2011) is wholly unrelated to whether that company "controls" the entity that made the false statement, for purposes of holding the corporate entity liable as a control person under §20(a) of the Securities Exchange Act. *Janus* in no way created a rule that a company (*i.e.* VWAG here) must *also* make a statement to be liable as a controlling person of the primary violator (*i.e.* VWGoA and the Individual Defendants here). *Janus*, at 564 U.S. 135, fn. 5 ("Although First Derivative argued below that JCG violated Rule 10b-5 by making the statements in the prospectuses, ***it now seeks to hold JCG liable <u>solely</u> as a <u>control person of JCM</u> under 20(a).*** The only question we must answer, therefore, is ***<u>whether JCM made the misstatements</u>***. ***Whether First Derivative has stated a claim against JCG as a control person depends on whether it has stated a claim against JCM***.") The same is true here: in the Opinion, the Court held that the Complaint sufficiently alleged that VWAG controls VWGoA. (Opinion at 47). Therefore, so long as the Court finds that the Complaint pleads the elements of a §10(b) claim as VWGoA and the Individual Defendants it can find VWAG liable under §20(a).

10

Knowing that they have no legal grounds upon which to base their argument, Defendants rely on their own extratextual interpretation of the Court's Opinion, drawing connections where none exist.

First, Defendants' view that the Complaint alleges "an unprecedented and attenuated theory of securities fraud liability" because it asserts securities fraud claims against a "non-issuer" for misstatements that "do not mention securities" has nothing to do with the Court's Opinion or its analysis. As both Defendants and the Court recognize, non-issuers can be liable for false statements in connection with securities transactions (Opp. at 8). Many securities fraud cases do not concern misstatements that "mention securities" but instead, as in this case, relate to a given event or product. *See, e.g., Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015) (misstatements about regulatory approval for new drug and results of clinical trials); *Sinnathurai v. Novavax, Inc.*, 645 F. Supp. 3d 495 (D. Md. 2022) (misleading statements and omissions concerning manufacturing and production difficulties of vaccine.). In analyzing the "in connection with" requirement, the Court held that "it is irrelevant that the misrepresentations were not made for the purpose or the object of influencing the investment decisions of market participants." Opinion at 46, quoting *Semerenko v. Cendant Corp.*, 223 F.3d 165, 176 (3d Cir. 2000) (applying the same standard enunciated in *SEC v. Tex. Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir. 1968) adopted and clarified by the Fourth Circuit in *Pirate*).

Second, Defendants cite *Stoyas v. Toshiba Corp.*, 424 F. Supp. 3d 821, 826 (C.D. Cal. 2020) declaring that it is the only case "that has ever permitted a securities claim to move forward based on unsponsored ADRs." (Opp. at 7). Defendants assert that *Stoyas* is distinguishable because it found purportedly held "plaintiffs 'plausibly demonstrated' a connection between the foreign issuer's 'conduct and the purchase or sale of the ADRs' that referenced *that issuer.*" (Opp at 7.

11

emphasis original). But the *Stoyas* Court did not rely on the fact that the "conduct" "referenced" the foreign issuer. The section of *Stoyas* Defendants cite the analyzes "whether Plaintiffs have sufficiently alleged Defendant's involvement ***in the establishment of the ADRs***." *Stoyas v. Toshiba Corp.*, 424 F.Supp.3d 821, 827-28 (C.D. Cal. 2020). Here, the Opinion found that the Complaint did sufficiently allege VWAG's involvement in the establishment of the ADRs. ("Plaintiffs have sufficiently pleaded Volkswagen's 'connection to the ADR transactions' by systematically describing the nature of the ADRs and the contractual terms associated with owning such securities, the specific depository banks that have registered the ADRs with the SEC, the details of said registration on Form F-6, and the nature of the OTC markets in which the ADRs trade, bedrock factors that establish the nature of the transactions involved." (Opinion at 49, *quoting Stoyas*, 896 F.3d at 951)). Accordingly, Defendants' view that not many securities class actions involve unsponsored ADRs has nothing to do with the Court's Opinion. Instead, the Court held that the foreign issuer (VWAG) could not be held liable for the conduct of its U.S. subsidiary (VWGoA) because it did not make statements pursuant to the Supreme Court's standard set forth in *Janus*. These are two distinct issues. As stated above the Court did not base the Opinion and the Court did not base its on the fact that the ADRs were unsponsored and clearly rejected Defendants' argument that "VWGoA's statements were not made 'in connection with' Plaintiffs transaction in ADRs because those ADRs are unsponsored" (Opinion at 15, 24). Despite this, Defendants' Opposition references the fact that the ADRs are "unsponsored" no less than twenty times. Moreover, in analyzing the "in connection with" requirement, the Court held: "Plaintiffs' allegations provide a plausible basis that the alleged misstatement 'touches' or 'coincides' with the 'purchase or sale of any other security in the United States.'" Opinion at 51, *quoting SEC v. Pirate Investors, LLC* 580 F.3d 233 at 244 (4th Cir. 2009).

12

Third, Defendants assert that Plaintiffs "attack a strawman" because their motion points out that persons other than the issuer of a security can be held primarily liable under Section 10(b), in light of the Court's holding that "without a plausible theory ascribed" to the issuer VWAG, Plaintiffs' securities transactions do not "'touch[ ]' or 'coincide'" with VWGoA and the Individual Defendants' false statements (Opinion at 52)." Defendants state that the Court "applied the settled rule that a non-issuer can be held liable only when its misstatements 'touch' or 'coincide' with the securities transactions at issue in the suit." (Opp. at 8).  But Defendants ignore that the Court held that: "Plaintiffs' allegations provide a plausible basis that the alleged misstatement 'touches' or 'coincides' with 'the purchase or sale of any other security in the United States,' quoting *Pirate,* 580 F.3d at 244. The Court also reaffirms the principle that 'publicly-disseminated press releases, research reports, and website representations that contain materially false and misleading statements regarding an issuer of securities satisfies the 'in connection' with requirement.'" (Opinion at 51). Defendants also fail to acknowledge that the Court held that VWGoA and the Individual Defendants' misstatements ***did*** affect VWAG ADRs: "given the alleged seriousness with which the market perceived the name change, it is entirely reasonable that investors would have relied upon the press release [ ] at least one securities analyst published a bullish report on Volkswagen following the publication of the press release)." (Opinion at 52).

Relatedly, Defendants claim that the "in connection with" requirement was not met "because the only possible way to connect" VWGoA and the Individual Defendants' false statements "to unsponsored VWAG ADRs was through VWAG, but, as the Court explained, Plaintiffs alleged no facts showing that VWAG was involved in or approved of" the false statements. (Opp at 8). Defendants' reasoning is entirely circular. If the only possible way to connect the securities of an issuer to a non-issuer's false statements was through the issuer's

13

approval of the false statements, then courts would have to find the false statements attributable to the issuer under *Janus* in every case seeking to hold a non-issuer of a security liable for violating 10(b).  This is not the law. This flawed reasoning conflates *Janus's* rule that only the speaker of a false statement can be liable for the false statement with the unrelated requirement that the alleged fraud occur in connection with a securities transaction for liability to attach under 10b.

Fourth, in attempting to distinguish the cases Plaintiffs cite in their Renewed Motion, Defendants rely on *SEC v. Pirate Investors LLC*, 580 F.3d 233 (4th Cir. 2009) asserting that unlike in *Pirate*, Plaintiffs' claims "check none of the boxes" in satisfying the "in connection with" requirement.  (Opp. at 9) But as the Court held- quoting authority from the Supreme Court, Fourth, Ninth, Second, and Third Circuits- this is untrue:

> ***[N]one of [the Pirate factors] are considered mandatory in satisfying the in connection with requirement; <u>they merely exist to guide the inquiry</u>. <u>A close fit with one factor may well be enough</u> for a fraud to result in 10(b) liability. Where the fraud alleged involves public <u>dissemination in a document on which an investor would presumably rely</u>, the in connection with requirement is <u>generally met</u> by means of dissemination and the materiality of the misrepresentation or omissions. It is irrelevant that the misrepresentations were not made for the purpose or object of influencing the investment decisions of market participants.***

Opinion at 46 (internal citations and quotations omitted, cleaned up),

And, in the Opinion the Court ruled that Plaintiffs satisfied the most important *Pirate* factor, holding, "given the alleged seriousness with which the market perceived the name change, it is entirely reasonable that investors would have relied upon the press release [ ] at least one securities analyst published a bullish report on Volkswagen following the publication of the press release)" (Opinion at 51-52 *citing Pirate*).

Finally, Defendants' erroneously assert that Plaintiffs "rely principally" on a blog post in addressing the Court's decision (Opp. at 11-12). This is of course demonstrably false, given that when Plaintiffs filed their initial motion last year, they did not reference Professor Lipton's article,

14

as it had just come out.  Further, Plaintiffs cite Professor Lipton's analysis of the Court's Opinion as *confirming* Plaintiffs' own analysis. It is Defendants- not Plaintiffs- who fail to cite any caselaw or other authority (with the exception of *Stoyas* which supports Plaintiffs' position) confirming their substantive interpretation of the Court's Opinion.

**C.    The Court Should Deny Defendants' Improper Request to Reconsider Its Opinion on Scienter**

Defendants assert that the Court's holding that VWGoA and the Individual Defendants acted with scienter was "clearly erroneous." (Opp. at 14). Despite this assertion, Defendants did not move for reconsideration. The Court should reject Defendants' attempt to improperly relitigate, via an opposition brief, an issue the Court has decided, on this basis alone.

The Court's decision on scienter was well-reasoned, thorough, and supported by several Fourth Circuit cases, Supreme Court precedent, authority from the Second, Seventh, Fifth and Third Circuits, and several district court opinions from within the Fourth Circuit. (Opinion at 34-44). The Opinion's analysis on scienter spans eight pages in which the Court carefully considered- and rejected- the very arguments Defendants rehash here.

As the Court held, "At the pleading stage, alleging either intentional or severely reckless conduct is sufficient" to plead scienter. Opinion at 35 *quoting Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 884 (4th Cir. 2014). And, "to meet the standard of recklessness, the complaint must aver 'an act so highly unreasonable and such and extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff." Opinion at 36, *quoting Ottmann v. Hanger Orthopedic Grp., Inc.*, 353 F.3d 338, 343 (4th Cir. 2003).

In assessing scienter and Defendants' opposing inferences as mandated by the Supreme Court's decision in *Tellabs*,[4] the Court specifically rejected Defendants' proposed inference "that

---

[4] *Tellabs Inc. v. Makor Issues & Rights, Ltd.* 551 U.S. 308 (2007).

no Volkswagen employee contemplated that the joke would influence investors in any way," holding "Defendants' position significantly downplays the recklessness of the stunt...The campaign no doubt sought to generate buzz and demand for Volkswagen's first electric SUV marketed in North America. ***These allegations are as close to a smoking gun as one could hope to have at the pleading stage.***" (Opinion at 39).  The Court further noted the benefits the fraud conferred upon Defendants: "[a] social media campaign powered by the name change announcement could help Volkswagen steal attention in the EV market away from Tesla." (Opinion at 40). Further, the Court stated that "calling a deceptive tactic a 'joke' as a euphemism for intentionally lying, ***particularly after doubling down on the deception when probed***, is exactly the sort of reckless corporate behavior Congress meant to check in enacting the Exchange Act and protecting retail investors." (Opinion at 41). Finally, the Court held that Defendants' reckless conduct ***did*** mislead investors: "And as already discussed, Plaintiff and other more sophisticated market participant and observers were misled." Opinion at 42.

Defendants assert that under *Tellabs, Inc.*, 551 U.S. 308 the Court must undertake a "comparative inquiry" in assessing the inferences for and against a finding of scienter. (Opp. at 13). But despite the comparative inquiry the Court undertook, and the Court's conclusion which is supported by caselaw and the Complaint's facts, Defendants impose that "there is only one plausible inference." (Opp. at 13). Defendants cite no controlling precedent contravening the Court's Opinion as to warrant reconsideration, and no rule of law that the Court's Opinion contradicts. Instead, Defendants merely fault the Court for not adopting their view. And again, as they did at the hearing and in their motion to dismiss, Defendants erroneously assert that to find scienter the Court was required to find that "VWGoA intended to juice the price of unsponsored VWAG ADRs for 36 hours."  (Opp. at 15).  This is simply not the law. As the Court correctly

16

held, even if Defendants did not intend to deceive investors, they at the very least recklessly disregarded the possibility of doing so. Accordingly, their conduct was "'so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Singer v. Reali*, 883 F.3d 425, 443 (4th Cir. 2018). Here, there is no basis for the Court to reconsider its Opinion as to scienter.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their renewed motion.

Dated: April 12, 2024

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Sara Fuks
Sara Fuks (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
sfuks@rosenlegal.com

*Lead Counsel for Plaintiffs*

**THE LAW FIRM OF CARLTON F. BENNETT, PLLC**

/s/ Carlton F. Bennett
Carlton F. Bennett
120 South Lynnhaven Rd. Ste.100
Virginia Beach, VA
Tel: (757) 486-5454
cbennett@carltonbennettlaw.com

*Local Counsel for Plaintiff*

17